**Alfred James WILLIAMS, Jr., Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 44337.**

Court of Criminal Appeals of Texas.

Dec. 21, 1971.

Rehearing Denied Feb. 16, 1972.

Carmen Glazner, Fort Worth (Court Appointed on Appeal), for appellant.

Frank Coffey, Dist. Atty., Marvin D. Snodgrass and Clinton Starr, Asst. Dist. Attys., Fort Worth, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DAVIS, Commissioner.

This is an appeal from a conviction of possession of marihuana with punishment assessed by the court at twenty years.

Fort Worth police officers, armed with a search warrant went to the home of appellant on September 12, 1969, searched appellant's house and found a yellow piece of paper between the mattress and box springs of a bed which contained marihuana.

Appellant contends the court erred in admitting evidence based on a search warrant issued upon an affidavit which failed to set out sufficient facts to constitute probable cause.

The affidavit reads:

"The State of Texas

County of Tarrant

I, G. T. Cox, do solemnly swear that heretofore, on or about the 10th day of September, A.D. 1969, in the City of Ft.

Worth, Tarrant County, Texas, one Alfred James Williams, Jr. known as 'Al' and Lemmie Williams did then and there unlawfully possess and does at this time unlawfully possess a narcotic drug and dangerous drug, to-wit: Heroin and Marihuana in Private Residence being described as a single story light green frame, duplex with Alfred James Williams occupying the west side of structure, located on the south side of the street 2924 Ennis Avenue in the City of Fort Worth in Tarrant County, Texas, which said Private Residence is possessed, occupied, under the control and charge of Alfred James Williams Jr., and Lemmie Williams.

MY BELIEF OF THE AFORESAID STATEMENT IS BASED ON THE FOLLOWING FACTS:

On September 10, 1969, Fort Worth Police Narcotic Officer Cox received information from a credible and previously reliable source that Alfred James Williams Jr. and Lemmie Williams had some narcotic drugs, heroin and marihuana secreted on the premises at 2924 Ennis Avenue. This credible source related details of having been to 2924 Ennis Ave., on several occasions to purchase drugs, the most recent being within the past 24 hours, being a user, the source has a knowledge of drugs. This credible source has provided true and correct information on several occasions which has led to the seizure of illicit drugs. Narcotic Officers have also received credible information from two other reliable sources stating the activities of Alfred James Williams, Jr. and Lemmie Williams in relation to the Use and distribution of drugs. Affiants own investigation has revealed that 2924 Ennis Avenue is occupied and controlled by Alfred James Williams, Jr. and Lemmie Williams and have observed both on the premises as well as others on recent occasions.

Wherefore, I ask that a warrant to search for and seize the said narcotic drug and dangerous drug at the above described premises be issued in accordance with the law in such cases provided.

G. T. Cox

Sworn to and subscribed before me by Ft. Worth Narcotic Officer G. T. Cox, on this the 10th day of September, A.D. 1969.

W. W. Matthews
MAGISTRATE

Justice of the Peace,
Precinct No. 1, Place 1
—— County, Texas"

The affidavit is largely based on hearsay information. To meet the requirements set forth by Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 273, "the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825 [11 L.Ed.2d 887], was 'credible' or his information 'reliable.'"

█ In determining the reliability of the informer, we must look to the affidavit which shows that affiants received information from a "credible and previously reliable source", and a "credible source has provided true and correct information on several occasions which has led to the seizure of illicit drugs." The affidavit furnished sufficient underlying circumstances from which the magistrate could conclude that the informer's information was reliable.

In determining if the magistrate was informed of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, the affidavit recites: "This credible source related details of having been to 2924 Ennis Ave., on several occasions to

purchase drugs, the most recent being within the past 24 hours, being a user, the source has a knowledge of drugs."

The recitations of personal and recent activity of the informant going to appellant's residence to purchase drugs are factors showing that the information had been gained in a reliable manner. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697. While we recognize, as appellant contends, that no statement is made that informant made any purchase or saw any drugs, at appellant's residence, we find it difficult to imagine that a user of drugs would go to a place to purchase same on several occasions unless drugs were actually present. If the word "purchased" rather than "purchase" had been used, all uncertainty would have been removed. We must recognize as the court did in United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (June 28, 1971), that affidavits for search warrants "are normally drafted by nonlawyers in the midst and haste of a criminal investigation", and noted:

"Such a construction of the affidavit is the very sort of hypertechnicality—'of elaborate specificity once exacted under common law'—condemned by this Court in Ventresca. A policeman's affidavit 'should not be judged as an entry in an essay contest,' Spinelli, supra, 393 U.S. at 438, 89 S.Ct. [584] at 600 [21 L.Ed.2d at 657] (Fortas, J., dissenting), but rather must be judged by the facts it contains."

Unlike the affidavit condemned in Spinelli v. United States, 393 U.S. 410, 89 S. Ct. 584, 21 L.Ed.2d 637, the affidavit recites how the informant came by his information. The affidavit contains allegations which go beyond the affiant's mere suspicion. Ruiz v. State, Tex.Cr.App., 457 S. W.2d 894.

While we are satisfied that the dual requirements of Aguilar have been met, we note that the affidavit is not based solely on hearsay, since there are assertions with-

in affiant's knowledge contained therein. The recitation, "Affiants own investigation has revealed that 2924 Ennis Avenue is occupied and controlled by Alfred James Williams, Jr. and Lemmie Williams and have observed both on the premises as well as others on recent occasions", lends credence to otherwise unsupported conclusions and apprises them that the informer's story was not entirely out of the whole cloth. In Gaston v. State, Tex.Cr.App., 440 S.W. 2d 297 (concurring opinion), where the affidavit recited that of affiant's own personal knowledge that the accused occupied the bottom half of the building at the address given by informer, it is said:

"Whether such information was acquired by independent corroboration or surveillance is not revealed but none of such information is attributed solely to the informer. Since they personally knew the location of the building and of the existence of the accused they knew the informer's story was not entirely out of the whole cloth. Such personal knowledge lends support to their otherwise unsupported conclusion that the informant is 'credible and reliable.'"

We reject appellant's contention that the search warrant was based on an affidavit which did not reflect probable cause.

■ Appellant urges that the search warrant was invalid in that the jurisdiction of a justice of the peace acting as a magistrate is coextensive with the boundaries of his particular county, and neither the warrant nor the affidavit upon which it was based sets forth the county of the magistrate issuing the warrant. The heading of the affidavit and search warrant recites the "State of Texas, County of Tarrant", and the search warrant is directed "To the Sheriff or any Peace Officer of Tarrant County, Texas." A similar contention was also raised in Hernandez v. State, 158 Tex.Cr.R. 296, 255 S.W.2d 219, wherein this court noted that this omission in the jurat of the warrant does not render the search warrant fatally insufficient. See

also Alexander v. State, 123 Tex.Cr.R. 65, 57 S.W.2d 157. We reject appellant's contention that the search warrant was issued by a magistrate without jurisdiction.

The appellant contends the court erred in admitting evidence obtained as a result of the search, because the search followed an unlawful and unconstitutional entry into the house.

The record reflects that upon entry into appellant's house, the officers realized they had a search warrant for another address; that an officer obtained the correct warrant which had been left in the police car outside the residence, and that no search was made until the search warrant was served on appellant who was not present when the original entry was made. The following testimony by Officer Bullock appears in the record:

"Q Now you're telling this Court you all burst into this house, arrested a woman, then stopped all of a sudden because you realized you didn't have a warrant, you had the wrong search warrant?

"A I'm telling the Court instead of bursting in the house I opened the back screen door and the other door was unlocked, turned the knob, walked in, and there was a lady laying in the bed, and child about about four years old, and—

\* \* \* \* \* \*

"Q How did you enter the home?

"A I entered the house, State Agent Adams caught hold of the screen door, and I am standing right by the side of him, and he had to jerk the door open, and when he jerked it open, we ran in. The wooden regular door was not locked. We just put our hand on the knob and run on in the house."

Article 18.16, Vernon's Ann.C.C.P., provides:

"The officer shall, upon going to the place ordered to be searched, or before seizing any property for which he is ordered to make search, give notice of his purpose to the person who has charge of, or is an inmate of, the place, or who has possession of the property described in the warrant."

In Martinez v. State, 473 S.W.2d 520 (November 9, 1971), this court said, " \* \* \* failure to comply with this Article (or its predecessor) does not render the search illegal nor the evidence seized pursuant thereto inadmissible." See Rushing v. State, 151 Tex.Cr.R. 221, 206 S.W. 2d 252; Boyer v. State, 128 Tex.Cr.R. 76, 79 S.W.2d 318; Justice v. State, 112 Tex. Cr.R. 586, 18 S.W.2d 657. Unlike Martinez, the officers herein testified that no search was conducted until the search warrant was served on appellant. Appellant urges violation of his constitutional rights under the Fourth and Fourteenth Amendments. In Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726, where California officers entered Ker's apartment without notice or search warrant and seized marihuana and the California District Court of Appeal upheld the search even though there was non-compliance with the state statute [1] on the basis of judicial exception engrafted upon the statute, the United States Supreme Court said:

"This Court, in cases under the Fourth Amendment, has long recognized that the lawfulness of arrests for federal offenses is to be determined by reference to state law insofar as it is not violative of the Federal Constitution. Miller v. United States, [357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332] supra; United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948); Johnson v.

1. " 'To make an arrest . . . . in all cases a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which . . . [he has] reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired'." Cal. Penal Code § 844.

United States, 333 U.S. 10, 15, n. 5, 68 S.Ct. 367, 370, 92 L.Ed. 436 (1948). A fortiori, the lawfulness of these arrests by state officers for state offenses is to be determined by California law."

 We find the court did not err in admitting the evidence obtained as a result of the search.

 Appellant contends that the evidence was insufficient to support a finding that appellant was in possession of marihuana and that the trial court should have charged the jury that before they could convict appellant, they must find he possessed a sufficient quantity of marihuana to be smoked in a cigarette. Robert Tullis, a chemist for the Fort Worth Crime Laboratory, testified that he had observed thousands of marihuana cigarettes during his work at the crime lab, and that the amount of marihuana discovered, as a result of a search of appellant's house, was sufficient to make a marihuana cigarette. The court did not err in refusing appellant's requested instruction. There was sufficient evidence to support a finding that appellant was in possession of marihuana.

 Appellant's last contention is that the trial court erred by retiring the jury for further deliberation after at least one juror had indicated that he felt no verdict could be reached by further deliberation because such conduct on the part of the court coerced the jury's verdict. After the jury had deliberated for six and one-half hours, appellant made a motion for a mistrial, whereupon the court had the jury brought into open court to inquire about the status of the deliberations and the possibility of the jury reaching a verdict if allowed to deliberate longer. The foreman reported that they stood "approximately one or two to the rest," whereupon the judge asked for a show of hands to indicate how many jurors felt they could reach a verdict if they continued to deliberate and for a show of hands to indicate those who felt they could not reach a verdict if

the deliberations were continued. One juror indicated that a verdict could not be reached. The court stated, "All right. We will let you continue for a while." The jury was then returned to the jury room for further deliberation. There is nothing in the court's comment which could be construed as coercing the jury. The length of time that the jury may be held for deliberation rests largely in the sound discretion of the court, and unless it is made to appear that the court abused its discretion in this regard, no reversible error is shown. Art. 36.31, V.A.C.C.P.; Mills v. State, Tex.Cr.App., 455 S.W.2d 296; Broadhead v. State, Tex.Cr.App., 414 S.W.2d 931.

Finding no reversible error, the judgment is affirmed.

Opinion approved by the Court.