Irma Montez HERNANDEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–93–00061–CR.

Court of Appeals of Texas, Texarkana.

Dec. 22, 1993.

Cora Meyer, Carthage, for appellant.

A. Morris Samford, Jr., Crim. Dist. Atty., Carthage, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

A jury convicted Irma Hernandez of possession of marihuana and set her punishment at four years' confinement, probated for six years. On appeal she contends that the evidence was insufficient to support her conviction. She also contends that the trial court erred in refusing to submit her requested jury instructions on possession and voluntariness, that the court erred in admitting the marihuana in evidence because it was the product of an illegal search and seizure, that the judgment should be reversed because the state withheld evidence, and that the court erred in refusing her motion for a mistrial after the jury indicated it could not reach a verdict. We overrule these contentions and affirm the judgment.

On November 2, 1989, Officers Barry Washington and Lee Richards of the Texas Department of Public Safety were on routine

traffic patrol on Highway 59 in Panola County. Both officers had been active in a DPS criminal interdiction program designed to help officers recognize criminal activity when they make stops for routine traffic offenses. On this day, Richards was riding with and assisting Washington.

The officers testified that they were pursuing another vehicle when they saw a pickup truck driven by Hernandez pull out onto Highway 59 in front of a large truck. They stopped Hernandez for failure to yield the right of way.

Washington asked Hernandez for her driver's license and insurance papers, and she produced them. As a normal safety measure, Richards stood nearby and watched from approximately six feet away, while Washington investigated. Another woman was a passenger in the truck with Hernandez. Both officers testified that the other woman was cooperative, but spoke little English, making communication with her difficult. Washington asked Hernandez to get out of the truck so they could stand behind it while they investigated what was then a routine traffic stop.

While standing behind the truck and questioning Hernandez, Washington smelled the odor of "green" marihuana (apparently newly cut marihuana). He testified that green marihuana has a very distinctive odor and that he recognized the smell of it from his experience on many prior occasions.

Washington testified that, although he told Hernandez that she did not have to consent to a search of the truck, she did orally consent. Hernandez denied that her consent was either asked for or given. In any event, Washington searched the luggage container in the bed of the truck and found nothing but clothing. Washington stated that because the odor of marihuana was very strong at the rear of the truck, he looked and then crawled underneath the rear of the truck. He noticed that, although the spare tire was deflated, he could feel something hard in it. He also noticed that this tire had a new valve stem and scratches around the rim. He had

found spare tires with marihuana inside them on other occasions. Based on his observations, he explained his suspicions to Hernandez and advised her of her rights. After notifying the sheriff's office, Washington drove the patrol car, with Hernandez as a passenger, and Richards drove the truck with the truck's other passenger, to an Exxon service station. Washington testified that the spare tire had a lock on it and that the key to the lock was on the same key ring Hernandez had and which also contained the ignition key. He further stated that Hernandez opened the lock to the tire with this key. Hernandez denied that she had a key to the spare tire. She said the officers and station attendants cut the lock off by using a torch. Inside the tire the officers discovered eighteen foil wrapped packages of what was later confirmed to be green marihuana, weighing a total of 16.1 pounds.

Hernandez argues that the evidence is insufficient to support a finding that she knowingly exercised care, control, and management of the marihuana.

In reviewing the legal sufficiency of the evidence in a criminal case, we determine, after viewing the evidence in the light most favorable to the jury's verdict, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Stoker v. State*, 788 S.W.2d 1, 6 (Tex.Crim.App.1989), *citing Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see also Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991); *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim.App.1989). In doing so, we do not resolve conflicts in the evidence or weigh the credibility of witnesses. That is the function of the jury, which may accept or reject all or part of any witness's testimony. *Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992). Any inconsistencies in the evidence are resolved in favor of the verdict. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988). In assessing the sufficiency of the evidence, we review all the evidence admitted for the jury to consider, whether properly or erroneously admitted. *Gribble v. State*, 808

S.W.2d 65, 68 (Tex.Crim.App.1990), *cert. denied,* — U.S. — , 111 S.Ct. 2856, 115 L.Ed.2d 1023 (1991); *Collins v. State,* 602 S.W.2d 537, 539 (Tex.Crim.App.1980).

To convict a defendant of unlawful possession of marihuana, the State must adduce sufficient evidence to prove that the defendant exercised care, control, and management over the marihuana, and that the defendant knew that the matter possessed was marihuana. *Rhyne v. State,* 620 S.W.2d 599, 601 (Tex.Crim.App. [Panel Op.] 1981). The State need not prove that the defendant had exclusive possession of the contraband. *McGoldrick v. State,* 682 S.W.2d 573, 578 (Tex.Crim.App.1985); *Rhyne v. State,* 620 S.W.2d at 601. Where the defendant is not in exclusive possession of the place where the contraband is found, however, a court may not conclude that the defendant had knowledge and control over the contraband unless there are additional independent facts and circumstances affirmatively linking the defendant to the contraband. *Cude v. State,* 716 S.W.2d 46, 47 (Tex.Crim.App.1986); *McGoldrick v. State,* 682 S.W.2d at 578; *Rhyne v. State,* 620 S.W.2d at 601. Mere possession of the vehicle in which contraband is found, absent these additional facts and circumstances, will not support a conviction for possession. *See Marsh v. State,* 684 S.W.2d 676 (Tex.Crim.App.1984); *Watson v. State,* 752 S.W.2d 217, 222–23 (Tex.App.— San Antonio 1988, pet. ref'd).[1]

Circumstances that may link an accused to contraband include (1) presence when the search was executed; (2) contraband in plain view; (3) proximity to and the accessibility of the contraband; (4) accused under the influence of contraband when arrested; (5) accused's possession of other contraband when arrested; (6) accused's incriminating statements when arrested; (7) attempted flight; (8) furtive gestures; (9) odor of the contraband; (10) presence of other contraband or drug paraphernalia, not included in the charge; (11) accused's ownership or right to possession of the place where the controlled substance was found; (12) drugs found in an enclosed place. *Chavez v. State,* 769 S.W.2d 284, 288–89 (Tex.App.— Houston [1st Dist.] 1989, pet. ref'd). Evidence affirmatively connecting the accused to the contraband must amount to more than mere conjecture or speculation. *Dickey v. State,* 693 S.W.2d 386, 389 (Tex.Crim.App. 1984). At issue here, then, is whether additional facts and circumstances affirmatively link Hernandez to the pickup truck and, more specifically, to the spare tire where the marihuana was discovered.

The undisputed evidence shows that Hernandez had borrowed the truck from a friend in Wisconsin to drive to Weslaco, Texas for her (Hernandez's) brother's funeral. She had been to Weslaco for some time and was returning to Wisconsin when she was stopped. At the time of the stop, she had been in possession of the truck for at least twenty-four days, from October 10 or earlier until the date of the arrest, November 2.

1. Hernandez relies on *Randle v. State,* 828 S.W.2d 315 (Tex.App.—Austin 1992, no pet.), for the proposition that mere presence in the vehicle, absent other additional facts and circumstances linking the accused to the contraband, is not sufficient to convict. This argument is valid. *Randle,* however, based its reasoning on *Humason v. State,* 728 S.W.2d 363, 366–67 (Tex.Crim. App.1987), and both cases utilized the since rejected analytical construct under which, if the State based its case on circumstantial evidence, it was required to exclude every other reasonable hypothesis except that of the guilt of the defendant. Mere presence in the vehicle or proximity to the contraband did not, held these courts, exclude the reasonable hypothesis that the defendants were unaware of the contraband, since in both cases the triers of fact also had proof that the defendants did not have sole access to the vehicle. *Humason v. State,* 728 S.W.2d at 366;

*Randle v. State,* 828 S.W.2d at 317–18. Because Hernandez was tried after the decision of the Court of Criminal Appeals in *Geesa v. State,* 820 S.W.2d 154 (Tex.Crim.App.1991), her conviction is not reviewed to determine if the circumstantial evidence excludes every other reasonable hypothesis. The *Geesa* court expressly rejected this test. *Id.* at 161, *overruling Carlsen v. State,* 654 S.W.2d 444 (Tex.Crim.App.1983), and other like decisions. Sufficiency of the evidence in this case is reviewed under the standard of *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and its progeny and the standard for possession of contraband set out by *Rhyne v. State,* 620 S.W.2d 599, 601 (Tex.Crim.App. [Panel Op.] 1981). *See Lewis v. State,* 856 S.W.2d 271, 273–74 (Tex.App.—Texarkana 1993, no pet.).

Officer Washington testified that Hernandez had the key to the lock for the spare tire on the same key ring as the ignition key, a clear link between Hernandez and the contraband that evidences access, control, and management. Hernandez contradicted this testimony at trial, and Washington did not mention the key or the lock in his case report or his property inventory. Neither the lock nor the key, nor pictures of them, were available as evidence at trial. In addition, the other officer at the scene, Richards, who essentially acted as an observer during the stop, testified that he did not remember if there was a lock on the spare tire. Conflicts in the evidence, however, are for the trier of fact to reconcile. On appeal they will be resolved in favor of the verdict and not "second guessed" by this court. *Adelman v. State,* 828 S.W.2d at 421; *Moreno v. State,* 755 S.W.2d at 867.

Hernandez argues that several persons, most unnamed, had access to the truck. The relevant issue, however, is who had access to the spare tire. The marihuana was found in an enclosed place, secured inside the spare tire, which was itself secured to the truck by a lock. Hernandez's possession of the key to the lock on the spare tire establishes an affirmative link between her and the contraband and implies control over the marihuana. *Christopher v. State,* 639 S.W.2d 932, 935 (Tex.Crim.App. [Panel Op.] 1982). There was no evidence that anyone but Hernandez had a key to the spare tire and, undeniably, she had clear access to and control of the truck for a lengthy time before the stop and arrest.

In addition, Officer Washington testified there was a strong odor of green marihuana emanating from the truck. The odor was stronger at the rear of the truck, but could be detected near the passenger door. No affirmative evidence was offered that Hernandez was familiar with the odor of marihuana and, by itself, the presence of the

smell of marihuana would likely not be a sufficient affirmative link to tie her to the contraband. Expertise in the smell of marihuana may not be presumed, *see Reyes v. State,* 575 S.W.2d 38, 40 (Tex.Crim.App. [Panel Op.] 1979); *Armstrong v. State,* 542 S.W.2d 119, 120 (Tex.Crim.App.1976), but the presence of the odor has consistently been considered one of the factors that may link an accused to the contraband. *Marsh v. State,* 684 S.W.2d at 680; *Lewis v. State,* 664 S.W.2d 345, 349 (Tex.Crim.App.1984); *Whitworth v. State,* 808 S.W.2d 566, 570 (Tex. App.—Austin 1991, pet. ref'd). And, in this case, the odor was not offered as the sole link between Hernandez and the contraband. The fact that the marihuana was "green" even though Hernandez had possessed the truck for twenty-four days, could raise an inference that it had been secreted in the tire recently and while she had control of the truck.

The jury also heard testimony that Hernandez appeared nervous during the stop. Again, by itself this would be too tenuous a link to the contraband, as most people are somewhat nervous when confronted by a police officer. *Glass v. State,* 681 S.W.2d 599, 602 (Tex.Crim.App.1984). But this is one of several links between Hernandez and the marihuana. Additionally, Hernandez told the officers she owned the truck, which was false.

The evidence showed Hernandez's proximity and access to the marihuana, her control for twenty-four days of the vehicle where the marihuana was found, the fact that the marihuana was found in an enclosed place, the odor of the marihuana, and her nervousness at the time of the traffic stop. When considered together, those independent facts link her to the contraband. We find sufficient evidence to support the verdict.[2]

■ Hernandez also complains that the jury charge failed to adequately apply the

---

2. Since we believe that our exclusive fact jurisdiction under the constitution both permits and requires us to review the factual sufficiency when sufficiency of the evidence is challenged on appeal, we have done so in this appeal. *See Stone* *v. State,* 823 S.W.2d 375 (Tex.App.—Austin 1992, pet. ref'd, untimely filed); Susan Bleil & Charles Bleil, *The Court of Criminal Appeals Versus the Constitution: The Conclusivity Question,* 23 St. Mary's L.J. 423 (1991).

law to the facts. Specifically, she argues that the trial court erred by refusing to give her specially requested charge and definition of possession. She states that the charge should also have affirmatively instructed the jury that they must acquit Hernandez if they found that she did not know of the existence of the marihuana.

The applicable part of the charge reads as follows:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 2nd day of November, 1989 in Panola County, Texas, the defendant, IRMA MONTEZ HERNANDEZ, did intentionally and knowingly possess a usable quantity of marihuana, and that such usable quantity consisted of 50 pounds or less but more than 5 pounds of marihuana, then you will find the defendant guilty....

Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find the defendant not guilty.

In Paragraphs 1 and 2 of the charge is the following:

### 1.

Our law provides that a person commits an offense if he knowingly or intentionally possesses a usable quantity of marihuana.

By the term "possession" is meant the actual care, custody, control or management of the marihuana.

Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control.

### 2.

A person acts intentionally, or with intent, with respect to the nature of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

Hernandez requested this instruction:

"Before you would be warranted [in convicting] a defendant, you must find from the evidence beyond a reasonable doubt that the exhibits introduced in evidence by the State are marijuana; that you must also find this beyond a reasonable doubt, the defendant voluntarily had the same in her possession."

... "However, if you find from the evidence, beyond a reasonable doubt, that the officer found the alleged marijuana in the car occupied by Defendant, but you further find that the Defendant did not voluntarily possess or knowingly have control of said marijuana for at least a sufficient period of time to permit her to terminate her control if she had any control whatever, or if you have a reasonable doubt as to such voluntary possession or control by the Defendant, then you will find for the Defendant and say by your verdict not guilty."

Hernandez argues that under *Carrillo v. State*, 591 S.W.2d 876 (Tex.Crim.App. [Panel Op.] 1979); *Reed v. State*, 479 S.W.2d 47 (Tex.Crim.App.1972); and *Bueno v. State*, 677 S.W.2d 261 (Tex.App.—Corpus Christi 1984, pet. ref'd), she was entitled to the requested instruction. *Reed* held that, where a fact issue as to a defendant's possession of contraband had been raised at trial, the jury must be instructed on what constitutes possession under the law. *Reed v. State*, 479 S.W.2d at 48. *Bueno* cites *Reed* and *Carrillo* for essentially the same proposition. *See Carrillo v. State*, 591 S.W.2d at 891; *Bueno v. State*, 677 S.W.2d at 264–65.

The court's charge complied with the law as set out in the above cases. The charge instructs the jury that they are not to find Hernandez guilty unless they find beyond a reasonable doubt that the substance was marihuana and that she intentionally and voluntarily possessed the marihuana. In addition, it instructs the jury in clear language what constitutes possession under the law, as well as what constitutes intent. The requested instruction uses substantially similar and almost identical language to that used in the charge. Thus, the court's charge as given afforded Hernandez adequate protection and provided the same guidance as those she

requested. *See Moody v. State,* 827 S.W.2d 875, 893 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 113 S.Ct. 119, 121 L.Ed.2d 75 (1992); *Dabbs v. State,* 507 S.W.2d 567, 570 (Tex.Crim.App.1974). Where a refused charge is substantially similar to the charge given, no error is shown.

Hernandez contends that the trial court erred in admitting in evidence the marihuana and the testimony of the chemist because the search and seizure were illegal. She argues that no probable cause existed for the search because the traffic stop was both invalid and pretextual, and that her consent to search did not extend to a search of the spare tire. She raises these complaints under U.S. CONST. amends. IV and XIV, as well as TEX. CONST. art. I, § 9 and TEX.CODE CRIM.PROC. ANN. art. 38.23 (Vernon Supp.1994).

Once a police officer makes a bona fide stop or arrest for a traffic offense, he can make an additional arrest for any other offense unexpectedly discovered while investigating or questioning the motorist. *Attwood v. State,* 509 S.W.2d 342, 344 (Tex. Crim.App.1974). If, during routine questioning related to the traffic offense, the officer acquires probable cause on a more serious charge, he may arrest for that offense and conduct a valid search for evidence incident to that arrest. *Id.; see also Christopher v. State,* 639 S.W.2d at 935; *Valencia v. State,* 820 S.W.2d 397, 399 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd). In addition, when an officer possesses probable cause to believe that a vehicle contains contraband, a valid search may be conducted in the part of the vehicle where the officer believes the contraband is concealed. *Chambers v. Maroney,* 399 U.S. 42, 48, 90 S.Ct. 1975, 1979–80, 26 L.Ed.2d 419, 426–27 (1970); *Christopher v. State,* 639 S.W.2d at 935. Analysis of probable cause is based on "the totality of the circumstances" test set out in *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983), and since adopted by our Court of Criminal Appeals. *Whaley v. State,* 686 S.W.2d 950, 951 (Tex. Crim.App.1985).

Both Officer Washington and Officer Richards testified that they observed Hernandez fail to yield the right of way to an eighteen-wheel truck as she entered Highway 59 from an Exxon station. Because Hernandez violated a traffic regulation, specifically TEX.REV.CIV.STAT.ANN. art. 6701d, § 74 (Vernon 1977), in the officers' presence, they were authorized to stop her. Washington testified that while he was questioning her he smelled the strong odor of green marihuana. Because the initial stop was proper, the subsequent search of the truck, after Washington smelled the strong odor of green marihuana, was also authorized, the odor having created sufficient probable cause for Washington to believe marihuana was concealed in the truck. *See United States v. Ross,* 456 U.S. 798, 807–10, 102 S.Ct. 2157, 2163–65, 72 L.Ed.2d 572, 583–84 (1982); *Marsh v. State,* 684 S.W.2d at 679; *Attwood v. State,* 509 S.W.2d at 344. Washington testified that he was very familiar with the odor of green marihuana. Glen Johnson, the laboratory supervisor and chemist from the Department of Public Safety crime lab in Tyler, verified that marihuana has a distinctive smell.

Hernandez argues that the search and seizure were not valid because the initial stop was a mere pretext to look for criminal activity. The pretext arrest doctrine is no longer viable in this state. *Garcia v. State,* 827 S.W.2d 937, 944 (Tex.Crim.App.1992). So long as an actual violation occurs, officers are free to take action. Both officers testified that they saw Hernandez commit the offense of failure to yield the right of way. Their stop of her vehicle was, then, fully justified.

Hernandez also relies on TEX. CONST. art. I, § 9, which prohibits unreasonable searches and seizures. The Texas Court of Criminal Appeals has held that analysis and interpretation of TEX. CONST. art. I, § 9, similar in language to the Fourth Amendment and until recently interpreted identically, is not bound by comparable United States Supreme Court decisions interpreting the

Fourth Amendment. *Heitman v. State*, 815 S.W.2d 681, 690 (Tex.Crim.App.1991). Therefore, Texas authorities must be analyzed to determine if Article I, § 9 provides greater protection against unreasonable searches and seizures than the minimum protection provided by the Fourth Amendment. We find no statute or decision drawing such a distinction and conclude that current interpretation of Article I, § 9 is consistent with interpretation of the Fourth Amendment. *See Johnson v. State*, 834 S.W.2d 121, 124 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd); *State v. Grant*, 832 S.W.2d 624, 628 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd); *Cook v. State*, 832 S.W.2d 62, 65 (Tex. App.—Dallas 1992, no pet.).

We conclude that probable cause existed to search the truck and seize the marihuana. Because of this conclusion, we need not address Hernandez's argument concerning consent to search.

Hernandez further complains that the State withheld evidence. Specifically, she claims that (1) Officer Washington failed to keep photographs of the spare tire and wheel well which would have proven whether she had a key to the lock, (2) the officers failed to keep a record of the names of four men who were, according to Hernandez's testimony, traveling to Wisconsin with her in a separate car and who stopped at the police station after her arrest, and (3) the State failed to produce a property inventory prepared by Washington until Washington testified at trial.

■ Washington testified that, at the time of the offense, it was his practice to take pictures of all traffic stops if he had film for the camera. He believed he had taken pictures of Hernandez's stop, but he was unable to locate them. He further testified that if he had taken pictures, he would have taken them of the spare tire, the packages of marihuana, and anybody involved in the case. Hernandez argues that these pictures could have supported her claim that she had no key to the spare tire, thus destroying a significant link between her and the contraband.

■ Deliberate suppression of evidence by the State violates a defendant's right to due process under the Fourteenth Amendment if the evidence is material to the issues of either guilt or punishment. *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215, 218 (1963).

■ The State's failure to *preserve* evidence that is only potentially useful to the defense does not amount to a denial of due process, unless the defendant shows bad faith on the State's part. *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 337–38, 102 L.Ed.2d 281, 289 (1988). The defendant must also show that the lost evidence is material and favorable to his case. *Hebert v. State*, 836 S.W.2d 252, 254 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd); *Nastu v. State*, 589 S.W.2d 434, 441 (Tex.Crim.App. [Panel Op.] 1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980). A showing that the lost evidence *may or might have been favorable* does not meet the materiality standard. There must be an affirmative showing that the evidence was favorable and material. *See United States v. Agurs*, 427 U.S. at 109–10, 96 S.Ct. at 2400–01, 49 L.Ed.2d at 353; *Stone v. State*, 583 S.W.2d 410, 415 (Tex.Crim.App. [Panel Op.] 1979); *Hebert v. State*, 836 S.W.2d at 254. Hernandez has failed to show bad faith on the State's part or materiality of the pictures.

Hernandez did not dispute that the spare tire container had a lock on it. She only contended that she had no key and that the officers cut the lock. She has not shown or even suggested that any pictures the officers may have made would have disproven that she had a key to the lock.

■ Hernandez also claims error because the officers failed to record the names of the men traveling in a separate car with her to Wisconsin. She testified at trial that the two vehicles were traveling together from Texas to Wisconsin. She stated that she and the other woman in the pickup truck and the

four men traveling in the other car were all going to work on a Christmas tree farm in Wisconsin. These four men were not present at the scene during the search and seizure. According to some testimony, they appeared at the sheriff's office ten or fifteen minutes after the officers and Hernandez arrived. One of the men identified himself as Hernandez's husband, which Hernandez testified was untrue. The officers briefly questioned the men, but did not detain them or record their names. The apparent purpose of the men stopping at the sheriff's office was to get traveling money that Hernandez testified had been given to her by the crew leader of the Christmas tree farm. She gave the money to one of the officers who, she stated, gave it to one of the men, and the men then left.

Hernandez testified that she discovered the names of the four men traveling with her a week before the trial and that she could have obtained the names a year earlier. However, she argues that these may not have been the same men questioned by the police and that the failure of the police to obtain and keep names of the men deprived her of essential witnesses.

Hernandez offered no evidence to support her claim that the men questioned by the police were not the men traveling with her to Wisconsin. She fails to show that any of the men could give any evidence that would be favorable or material to her case. If the men were those traveling with her to Wisconsin, she knew them and could obtain their testimony if it were relevant. If the men were not those who accompanied her, they would not have had any relevant evidence to give. No error is shown.

■ Finally, Hernandez argues that the State failed to produce, as part of her requested discovery of documentary evidence, the inventory prepared by Officer Washington. Washington testified that after the arrest he prepared an inventory of everything Hernandez had in her possession, in this case everything on or in the truck. Copies of the inventory were not furnished to either Hernandez or the State before trial.

■ Due process may be violated if the prosecution suppresses evidence, the evidence is favorable to the defense, and the evidence is material. *Butler v. State,* 736 S.W.2d 668, 670 (Tex.Crim.App.1987). Hernandez must satisfy all three parts of this test to show a violation of due process.

Because the inventory, which was produced at trial, does not list the lock or key to the lock that Washington stated was on the spare tire, it tends to corroborate Hernandez's version of the events and is arguably favorable to her defense. She therefore satisfies the second prong of the test.

As to materiality, the question is whether there is a reasonable probability that the delayed production of the inventory affected Hernandez's preparation or presentation of her case. *See United States v. Bagley,* 473 U.S. 667, 681–83, 105 S.Ct. 3375, 3383–84, 87 L.Ed.2d 481, 494 (1985); *O'Rarden v. State,* 777 S.W.2d 455, 459 (Tex.App.—Dallas 1989, pet. ref'd). Hernandez nowhere explains how the late disclosure of the inventory affected her presentation of the case. She states that such failure may be a violation of the Sixth Amendment's confrontation clause by denying pretrial access that prevents effective cross-examination, but she does not argue that such occurred in this case. She was able to fully cross-examine Washington concerning the inventory, and the jury was made fully aware of the information contained in the inventory. Nothing in the record indicates that her presentation of the case was affected in any way by the late disclosure of the inventory. She fails to satisfy the third prong of the test and shows no violation of due process.

Finally, Hernandez argues that the trial court committed reversible error in refusing to grant her motion for mistrial when the jury several times indicated it could not reach a verdict. She also contends that the trial court's response to these actions by the jury was coercive and deprived her of a fair trial.

■ A jury may be discharged when it cannot agree on a verdict if both sides

agree or, in the discretion of the trial court, "where it has been kept together for such time as to render it altogether improbable that it can agree." Tex.Code Crim.Proc. Ann. art. 36.31 (Vernon 1981). The length of time that a jury may be held for deliberation rests in the discretion of the trial court and, unless the record reveals abuse of discretion, reversible error is not shown. *Montoya v. State,* 810 S.W.2d 160, 166 (Tex.Crim.App. 1989). Sending the jury back for further deliberations after the jury has indicated it is deadlocked is well within the court's discretion. *See Williams v. State,* 476 S.W.2d 300, 305 (Tex.Crim.App.1971). There is no set time limit on the amount of time a jury may deliberate. *Green v. State,* 840 S.W.2d 394, 407 (Tex.Crim.App.1992).

▮ Review for abuse of discretion assesses the amount of time the jury deliberates considered in light of the nature of the case and the evidence presented. *Patterson v. State,* 598 S.W.2d 265, 268 (Tex.Crim.App. [Panel Op.] 1980). In addition, the trial court's communications with the jurors are accorded particular significance. *Woodson v. State,* 777 S.W.2d 525, 527 (Tex.App.—Corpus Christi 1989, pet. ref'd), *citing United States v. Gordy,* 526 F.2d 631, 636 (5th Cir. 1976).

▮ This trial began at 9:00 a.m. on Wednesday, April 7, 1993. The proceedings lasted until 3:40 p.m. of that day with an unspecified amount of time off for lunch. The trial resumed the next day, Thursday, April 8, 1993 at 9:00 a.m. The jury heard one more witness, and both sides closed. There was a total of seven witnesses, four called by the State and three called by the defense. In addition, twelve exhibits were introduced and received as evidence.

The jury deliberated Thursday from 9:51 a.m. until just after 4:00 p.m., when the trial court sent them home for the holiday weekend. The jury foreman told the court before the lunch and afternoon breaks that they had not yet reached a verdict. After returning to the courtroom at 4:05 p.m., the jury foreman

again stated that they were unable to reach a verdict, informed the court that "we could be here for weeks" and stated that no progress was being made toward a verdict. The court told the jury that he would release them for the weekend, but they would have to be back the following Monday. The jury then retired for a few more minutes of deliberation before once again, at 4:22 p.m., returning and informing the court that they had reached no verdict. The court then released the jury for the weekend. The jury returned at 9:00 a.m. on the following Monday, April 12, 1993, and at 10:30 a.m. returned its verdict.

Before releasing the jury on the Thursday afternoon and just before the jury retired for several final minutes of deliberation, the trial court stated:

> I am going to let you go back into the jury room and if you want to work, we are willing to stay with you as long as you want to stay this afternoon, but what I'm saying is that if you are not making any progress now, sometimes we find that a break and let you sleep on it and get away from it, you have been concentrating on this case for all of yesterday and today. But you can go back in there and then let me know. We will be here, but if you are not able to reach a verdict, you will have to come back.

Hernandez argues that the court's statement, along with the requirement that the jury return after the holiday weekend, had a coercive effect on the jury that deprived her of a fair trial. Her argument would be more persuasive if the jury, following the judge's remarks, reached a quick verdict on Thursday. The fact that the jury did not reach a verdict on Thursday, but did return after the holiday weekend, indicates that the statement had no coercive effect.

The jury deliberated for a total of approximately six to seven hours, given the time deducted for breaks and lunch on Thursday. The presentation of the evidence also took between six and seven hours. There were several issues for the jury to decide in reaching a verdict. The nature of the case, felony

possession of marihuana, and the evidence presented do not indicate that allowing six to seven hours for deliberation is an abuse of discretion. Hernandez's motion for mistrial was made on Thursday, after about five hours of deliberation, and then renewed the following Monday. In *Williams v. State*, 476 S.W.2d at 305, a case also involving possession of marihuana, no abuse of discretion was found where the jury deliberated for over six hours, one juror informed the court that a verdict could not be reached, and the trial court then ordered further deliberation, after which the jury returned a verdict of guilty. Similarly, Hernandez shows no abuse of discretion in this case.

As regards her argument that the judge's communications with the jury were coercive, an examination of the record reveals that, rather than being coercive, the judge's remarks, when taken in context, appear to be more of an attempt to relieve some of the tension associated with the deliberative process. Again, no abuse of discretion is evident from the record.

We find no error in the trial court's action. The judgment of the trial court is affirmed.