NUMBER 13-07-150-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


VICTOR RODRIGUEZ, Appellant,


v.


 

THE STATE OF TEXAS, Appellee.

 


On appeal from the 347th District Court 

of Nueces County, Texas

 


MEMORANDUM OPINION


Before Justices Rodriguez, Garza, and Vela


Memorandum Opinion by Justice Vela


 






 A jury convicted appellant, Victor Rodriguez, of possession of a controlled
substance, cocaine, weighing more than four grams but less than 200 grams. See Tex.
Health & Safety Code Ann. § 481.115(a), (d) (Vernon 2003). Punishment, enhanced by
two prior felony convictions, was assessed by the jury at sixty-five years in prison, plus a
$10,000 fine. Appellant presents three issues on appeal. We affirm.

I. Factual Background


 On March 25, 2006, Corpus Christi police officer Joe Gonzales was patrolling
Highway 286 when he saw a Dodge Ram pickup ahead of him. He testified that about an
hour before seeing the pickup:

 [W]e had received some intelligence over the radio. One of our narcotics
officers was conducting a surveillance on a known drug house and he
observed a vehicle matching this description either arrive at the home and
leave or was at the home and left. He advised that if we had any run ins with
the vehicle or saw the vehicle, if we could establish any kind of probable
cause, it might be something that we might want to look in a little bit later on.


 He stated that the pickup's license plate "was the license plate and possibly the
vehicle that the narcotics officer was talking about." Gonzales kept an eye on the pickup
as its driver, whom Gonzales later identified as appellant, made an unsignaled lane change
from the middle lane to the outside lane. After changing lanes, appellant, without signaling,
turned onto the Morgan Street exit. Gonzales followed him and saw him stop at a red light. 
When the light changed, appellant, without signaling, turned left onto Morgan Street. 
Gonzales testified that "I made the discretionary decision once I had seen those infractions
occur . . . to stop the vehicle. . . ." When Gonzales turned on his overhead lights,
appellant, without signaling, cut across two lanes of traffic and turned into a parking area.

 When appellant stopped, Gonzales saw two female passengers in the vehicle. 
Appellant did not have a driver's license, so Gonzales asked him to get out of the vehicle. 
Gonzales testified:

 [A]s I opened the [pickup's] door, he [appellant] stepped out and instead of
coming this way, he kind of gives me his back and he turns this way and
shuffles and then begins to walk back this way. As he did that, I noticed that
that movement was a little odd and I began to look at him. On his right hand,
it came down and as he made this movement, I saw his hand open up and
I looked down and something fell from his hand and went down to the floor.


When Gonzales looked down, he could see what fell from appellant's hand. He said it was
"a large rock, what appeared to be crack cocaine." Gonzales patted appellant down for
weapons and found what appeared to be a crack pipe in his front pocket. After putting
appellant in the patrol car, Gonzales looked around to make sure no one was around the
evidence. He then picked it up. Gonzales testified the evidence was inside a little
cellophane bag. When the prosecutor asked him, "Did you have any problems seeing
what you say you saw?", he replied, "No, no. It was a dark area, but my overhead lights
were on. My headlights were on in the vehicle, so I could easily see whatever fell from his
hand and hit the ground."

 Gonzales identified State's Exhibit 1 as the "piece of evidence" he found that night. 
The trial court admitted it into evidence. Defense counsel stipulated to the admission of
the lab report into evidence. The lab report showed the substance tested was over five
grams of crack cocaine.

 On cross-examination, the defense showed that, with respect to this incident,
Gonzales filled out a field-arrest report and an offense report. The former showed
appellant had committed only one traffic violation: failure to signal a lane change. The
latter showed he had committed two traffic violations: failure to signal a lane change; and
failure to signal before turning onto Morgan. Gonzales stated that he was "almost certain"
that he did not have a camera in his car when he stopped appellant. He did not know
whether the baggie which contained the crack cocaine was processed for fingerprints. He
said the crack pipe was not checked for fingerprints.

 Cesario Perez, a narcotics investigator, testified that the crack cocaine admitted into
evidence had a street value of $250, if sold by the gram. He also testified that a person
could "sell it by less than half a gram, which would normally go for about $20," increasing
the value to between $250 and $400.

 The defense rested without calling any witnesses.

II. Discussion


I. Sufficiency of the Evidence


 By issue one, appellant contends the evidence is legally and factually insufficient
to support his conviction. In assessing the legal sufficiency of the evidence to support a
conviction, we consider all the evidence in the light most favorable to the verdict and
determine whether, based on that evidence and reasonable inferences therefrom, a
rational juror could have found the essential elements of the crime beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979); Hooper v. State, 214 S.W.3d 9,
13 (Tex. Crim. App. 2007). The reviewing court must give deference to "'the responsibility
of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw
reasonable inferences from basic facts to ultimate facts.'" Hooper, 214 S.W.3d at 13
(quoting Jackson, 443 U.S. at 318-19). In reviewing the sufficiency of the evidence, we
should look at "'events occurring before, during and after the commission of the offense
and may rely on actions of the defendant which show an understanding and common
design to do the prohibited act.'" Hooper, 214 S.W.3d at 13 (quoting Cordova v. State, 698
S.W.2d 107, 111 (Tex. Crim. App. 1985)). Each fact need not point directly and
independently to the accused's guilt, as long as the cumulative force of all the incriminating
circumstances is sufficient to support the conviction. Hooper, 214 S.W.3d at 13; see
Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993) ("[i]t is not necessary that
every fact point directly and independently to the defendant's guilt; it is enough if the
conclusion is warranted by the combined and cumulative force of all the incriminating
circumstances.").

 In a factual-sufficiency review, we review the evidence in a neutral light rather than
(as in a legal sufficiency review) in the light most favorable to the verdict. Roberts v. State,
220 S.W.3d 521, 524 (Tex. Crim. App. 2007), cert. denied, 128 S.Ct. 282 (2007); Johnson
v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). The evidence can be factually insufficient
in one of two ways: "(1) when the evidence supporting the verdict is so weak that the
verdict seems clearly wrong and manifestly unjust, and (2) when the supporting evidence
is outweighed by the great weight and preponderance of the contrary evidence so as to
render the verdict clearly wrong and manifestly unjust." Roberts, 220 S.W.3d at 524;
Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); Johnson, 23 S.W.3d at
11. A reversal for factual insufficiency cannot occur when "'the greater weight and
preponderance of the evidence actually favors conviction.'" Roberts, 220 S.W.3d at 524
(quoting Watson, 204 S.W.3d at 417). Although an appellate court reviewing factual
sufficiency has the ability to second-guess the jury to a limited extent, the review should
still be deferential, with a high level of skepticism about the jury's verdict required before
a reversal can occur. Roberts, 220 S.W.3d at 524; Watson, 204 S.W.3d at 417; Cain v.
State, 958 S.W.2d 404, 407, 410 (Tex. Crim. App. 1997).

Analysis


 A person commits an offense if that person intentionally or knowingly possesses more
than four grams but less than 200 grams of cocaine. See Tex. Health & Safety Code Ann.
§ 481.115(a), (d) (Vernon 2003). To prove unlawful possession of a controlled substance,
the State must prove: (1) the accused exercised control, management, or care over the
substance; and (2) the accused knew the matter possessed was contraband. Poindexter
v. State, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). Regardless of whether the evidence
is direct or circumstantial, it must establish that an accused's connection with the drug was
more than fortuitous. Evans v. State, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006). (1) The
number of links (2) between an accused and the drugs is not dispositive, rather it is the logical
force of all of the evidence, direct and circumstantial. Id.

 Here, the evidence showed that: (1) Gonzales saw appellant's hand open up and
drop something: (2) Gonzales looked down and saw what appeared to be a rock of crack
cocaine; (3) Gonzales had enough light to see what appellant had dropped; (4) Gonzales
picked up the suspected crack cocaine; (5) the suspected crack cocaine was admitted into
evidence; (6) counsel stipulated to the lab report, which showed the substance tested to be
over five grams of crack cocaine; and (7) appellant had what appeared to be a crack pipe
in his pocket.

 The defense showed that: (1) when appellant was stopped, there were two female
passengers in the pickup; (3) (2) Gonzales did not know whether police checked for latent
fingerprints on the baggie, which had contained the crack cocaine; (3) police did not check
for latent fingerprints on the crack pipe; and (4) nothing related to this incident was caught
on videotape.

 The evidence, viewed in the light most favorable to the verdict, established beyond
a reasonable doubt that appellant exercised actual care, custody, control, or management
of the crack cocaine and that he knew the matter he possessed was contraband. Thus, the
evidence was legally sufficient to support the verdict.

 Furthermore, the evidence is factually sufficient because the evidence supporting the
verdict is not so weak that the verdict seems clearly wrong and manifestly unjust, and the
supporting evidence is not outweighed by the great weight and preponderance of the
contrary evidence so as to render the verdict clearly wrong and manifestly unjust. We
overrule issue one.

2. Motion to Suppress

 
By issue two, appellant argues the trial court abused its discretion by denying his
motion to suppress the evidence obtained in connection with the stop, thus depriving him of
liberty without due process of law in violation of the Fourteenth Amendment to the United
States Constitution and Article 1, Section 19 of the Texas Constitution. See U.S. Const.
amend. XIV; Tex. Const. art. 1, § 19.

 At the pretrial suppression hearing, the State called Officer Gonzales, who testified
appellant failed to use his turn signal before changing lanes on Highway 286, exiting the
highway, and turning left onto Morgan. Even though Gonzales stated that the pickup
appellant was driving resembled the description of the pickup given by the undercover
narcotics unit, he testified that he stopped appellant because of a traffic violation. (4)

 On cross-examination, counsel showed that Gonzales's offense report and field-arrest
report reflected that appellant had committed two traffic violations and one traffic violation,
respectively. 

 Appellant testified that he used his turn signal when he changed lanes, exited the
freeway, and turned left onto Morgan Street. He claimed Gonzales was lying about him not
using his turn signal.

Standard of Review


 When police conduct a warrantless search and seizure, the State bears the burden
to show the officer had reasonable suspicion to believe the individual was violating the law. 
Castro v. State, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007). Reasonable suspicion exists
if the officer has specific, articulable facts that, when combined with rational inferences from
those facts, would lead him or her to reasonably conclude that a particular person actually
is, has been, or soon will be engaged in criminal activity. Castro, 227 S.W.3d at 441 (citing
Garcia v. State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001)). A reasonable-suspicion
determination is made by considering the totality of the circumstances, giving almost total
deference to the trial court's determination of historical facts and reviewing de novo the trial
court's application of the law to facts not turning on credibility and demeanor. Castro, 227
S.W.3d at 441 (citing Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). 
Because the trial court did not make explicit findings of fact in this case, we review the
evidence in a light most favorable to the trial court's ruling and assume the trial court made
implicit findings of fact supported by the record. Castro, 227 S.W.3d at 441 (citing Balentine
v. State, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002)).

 Appellant contends there are discrepancies in the number of traffic violations which
Officer Gonzales testified to at the suppression hearing and at trial and which he mentioned
in his offense report and field-arrest report. Appellant argues the discrepancies are sufficient
to question Gonzales's credibility. Thus, he contends there is no evidence of any traffic
violation to justify the stop.

 Officer Gonzales testified at the suppression hearing that he stopped appellant for
traffic violations, one of which was an unsignalled lane change. He mentioned this violation
in his offense report and his field-arrest report. Section 545.104(a) of the transportation code
provides, in relevant part: "An operator shall use the signal authorized by Section 545.106
to indicate an intention to . . . change lanes, . . . ." Tex. Transp. Code Ann. § 545.104(a)
(Vernon 1999). A law-enforcement officer may validly stop and detain a person for a traffic
violation. (5) Lemmons v. State, 133 S.W.3d 751, 756 (Tex. App.-Fort Worth 2004, pet. ref'd);
see Garcia v. State, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992) (police officers' stop and
detention of defendant for stop-sign violation reasonable under Fourth Amendment
principles); Hargrove v. State, 40 S.W.3d 556, 559 (Tex. App.-Houston [14th Dist.] 2001,
pet. ref'd) (reasonable suspicion for stop existed when detective testified officers made traffic
stop based on driver's failure to signal lane change); Tex. Dep't of Pub. Safety v. Walter, 979
S.W.2d 22, 29 (Tex. App.-Houston [14th Dist.] 1998, no pet.) (trooper's sworn report stating
he saw driver commit traffic offense of changing lanes without signaling was "substantial
evidence that he had reasonable suspicion to stop" the vehicle).

 Under the applicable standard of review, we defer to the trial court's assessment of
Officer Gonzales's and appellant's credibility. See Ross v. State, 32 S.W.3d 853, 855 (Tex.
Crim. App. 2000) (at suppression hearing, judge may believe or disbelieve all or any part of
a witness's testimony); State v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999) (at
suppression hearing, trial court is sole trier of fact and judge of witness's credibility and
weight to be given their testimony). Furthermore, with respect to appellant's contention that
there are discrepancies in the number of traffic violations which Gonzales testified to at the
suppression hearing and which he mentioned in his offense and field-arrest reports, we
presume the trial court resolved any discrepancies against appellant. See Ross, 32 S.W.3d
at 855; Ballard, 987 S.W.2d at 891.

 Viewing the evidence in the light most favorable to the trial court's ruling, then, we
infer that the trial court believed Gonzales's testimony. (6) Ross, 32 S.W.3d at 855; Ballard,
987 S.W.2d at 891. Accordingly, giving deference to the trial court's implied finding that
Gonzales saw appellant commit the traffic violation of failure to signal a lane change, we
conclude the trial court did not err by determining that Gonzales had reasonable suspicion
to stop appellant and that the stop was valid. Therefore, we hold that the trial court did not
err by denying appellant's motion to suppress. We overrule issue two.

3. Jury Instruction

 In his third issue, appellant contends the trial court committed reversible error when
it refused to grant a jury instruction pursuant to article 38.23 of the Texas Code of Criminal
Procedure. That article provides:

 (a) No evidence obtained by an officer or other person in violation of
any provisions of the Constitution or laws of the State of Texas, or of the
Constitution or laws of the United States of America, shall be admitted in
evidence against the accused on the trial of any criminal case.


 In any case where the legal evidence raises an issue hereunder, the
jury shall be instructed that if it believes, or has a reasonable doubt, that the
evidence was obtained in violation of the provisions of this Article, then and in
such event, the jury shall disregard any such evidence so obtained.


Tex. Code Crim. Proc. Ann. art. 38.23(a) (Vernon 2005).

 Appellant contends the evidence before the jury regarding Officer Gonzales's reason
for stopping him raised the issue and, therefore, the trial court should have instructed the jury
as per the article. The record reflects Gonzales was the only witness who testified in front
of the jury regarding the facts of the stop. 

 In construing article 38.23(a), the court of criminal appeals has held that "when
conflicting evidence raises an issue regarding the right to stop a driver, a court is statutorily
bound to include a requested charge on this issue." Reynolds v. State, 848 S.W.2d 148, 149
(Tex. Crim. App. 1993) (emphasis added). A fact issue about whether the evidence was
legally obtained may be raised "'from any source, and the evidence may be strong, weak,
contradicted, unimpeached, or unbelievable.'" Garza v. State, 126 S.W.3d 79, 85 (Tex.
Crim. App. 2004) (quoting Wilkerson v. State, 933 S.W.2d 276, 280 (Tex. App.-Houston [1st
Dist.] 1996, pet. ref'd)). The jury is required to receive an article 38.23 instruction only when
the trial evidence raises a factual issue regarding whether the evidence was obtained in
violation of the Constitution or laws of the United States or the State of Texas. See Bell v.
State, 938 S.W.2d 35, 48 (Tex. Crim. App. 1996). A factual dispute about how the evidence
was obtained must also exist. Balentine v. State, 71 S.W.3d 763, 773 (Tex. Crim. App.
2002).

 Here, Officer Gonzales testified that he saw appellant change lanes on Highway 286
without signaling. He also testified that he saw appellant commit three other traffic violations. 
On cross-examination, he stated that he mentioned in his offense report and field-arrest
report that appellant committed only two traffic violations and one traffic violation,
respectively. We note that Gonzales mentioned the unsignalled lane change in both reports. 
Thus, his cross-examination testimony did not raise a fact issue concerning the reason for
the stop. There is a discrepancy in the number of traffic violations which Gonzales saw
appellant commit. However, there is no dispute that Gonzales stopped appellant because
of a traffic violation, and there is no dispute that appellant failed to signal a lane change. 
One traffic violation provided the reasonable suspicion necessary for Gonzales to stop
appellant.

 Accordingly, because there is no conflicting evidence which raises an issue regarding
the right to stop appellant, the trial court was not statutorily bound to include the requested
charge on this issue. See Reynolds, 848 S.W.2d at 149; see also Rose v. State, 470
S.W.2d 198, 200 (Tex. Crim. App. 1971) (no jury issue raised when defendant called no
witness to controvert officers' testimony with respect to events and circumstances at time of
arrest, and cross-examination did not raise fact issue on right to arrest). The third issue is
overruled.

III. Conclusion

 The trial court's judgment is affirmed.

 



 ROSE VELA

 Justice


Do not publish. 

Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and 

filed this 27th day of December, 2007.
1. In Evans v. State, 202 S.W.3d 158, 161 n.9 (Tex. Crim. App. 2006), the court agreed with Judge
Womack's concurrence that the "affirmative links" rule is not an independent test of legal sufficiency. The
court stated, "We use that term merely as a shorthand catch-phrase for a large variety of circumstantial
evidence that may establish the knowing 'possession' or 'control, management, or care' of some item such
as contraband." The court went on to say that Judge Womack was correct in stating that "the legal issue is
'whether there was evidence of circumstances, in addition to mere presence, that would adequately justify the
conclusion that the defendant knowingly possessed the substance.'" The court stated, "We have used that
term 'affirmative links,' but we recognize that 'affirmative' adds nothing to the plain meaning of 'link.'" (citation
omitted).
2. The Fourteenth Court of Appeals summarized a non-exclusive list of possible "affirmative links" that
Texas courts have recognized as sufficient, either singly or in combination, to establish a person's possession
of contraband: (1) the accused's presence when a search is conducted; (2) whether the contraband was in
plain view; (3) the accused's proximity to and the accessibility of the drug; (4) whether the accused was under
the influence of drugs when arrested; (5) whether the accused possessed other contraband or drugs when
arrested;(6) whether the accused made incriminating statements when arrested; (7) whether the accused tried
to flee; (8) whether the accused made furtive gestures; (9) whether there was an odor of contraband; (10)
whether other contraband or drug paraphernalia were present; (11) whether the accused owned or had the
right to possess the place where the drugs were found; (12) whether the place where the drugs were found
was enclosed; (13) whether the accused was found with a large amount of cash; and (14) whether the conduct
of the accused indicated a consciousness of guilt. Olivarez v. State, 171 S.W.3d 283, 291 (Tex.
App.-Houston [14th Dist.] 2005, no pet.). In Evans, the court, referring to the aforementioned links, stated,
"These are simply some factors which may circumstantially establish the legal sufficiency of the evidence to
prove a knowing 'possession.' They are not a litmus test." Evans v. State, 202 S.W.3d 158, 162 n.12 (Tex.
Crim. App. 2006).
3. The two female passengers did not testify during the guilt phase.
4. During the pretrial suppression hearing, the prosecutor questioned Officer Gonzales as follows:


 Q. [D]id the vehicle that you stopped resemble the vehicle that was described?


 A. Yes. It was the license plate that was given.


 Q. But the traffic violation is why you stopped him?


 A. Yes. It was.
5. An objectively valid traffic stop is not unlawful even if it is merely pretextual (i.e., even if the detaining
officer has some ulterior motive for making the stop). Crittenden v. State, 899 S.W.2d 668, 671, 674 (Tex.
Crim. App. 1995); Garcia v. State, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992).
6. Once a police officer makes a bona-fide stop or arrest for a traffic offense, he or she can then make
an arrest, or an additional arrest, for any other offense unexpectedly discovered while investigating or
questioning a motorist. See Lemmons v. State, 133 S.W.3d 751, 756 (Tex. App.-Fort Worth 2004, pet. ref'd);
Hernandez v. State, 867 S.W.2d 900, 907 (Tex. App.-Texarkana 1993, no pet.).