NUMBERS 13-00-602-CR &
13-00-605-CR

 

                             COURT OF APPEALS

 

                   THIRTEENTH DISTRICT OF TEXAS

 

                                CORPUS CHRISTI

                                                                                                                                 


 

KEVIN
JENKINS,                                                                   Appellant,

 

                                                   v.

 

THE
STATE OF TEXAS,                                                          Appellee.

                                                                                                                                 


 

    On appeal from the 344th District Court of
Chambers County, Texas.

                                                                                                                                 


 

                                   O P I N I O N

 

                     Before Justices Yañez,
Rodriguez, and Baird[1]

                                   Opinion
by Justice Baird     








Appellant
was charged by indictment with the offense of possession of more than fifty but
less than 200 pounds of marihuana in cause no. 10,887, and possession with the
intent to deliver 400 grams or more of cocaine in cause no. 10,888.  The cases were consolidated for trial.  A jury convicted appellant of each charged
offense, and found appellant used or exhibited a deadly weapon in each
case.  The trial court assessed
punishment at twenty years confinement in cause no. 10,887, and thirty-five
years confinement and a fine of $5,000 in cause no. 10,888.  Appellant raises five points of error.  The first and third points contend the
evidence is legally insufficient.  We
reverse.

I.  Standard of Appellate Review

In
determining whether the evidence is legally sufficient to sustain a conviction,
we employ the standard of Jackson v. Virginia and ask Awhether,
after viewing the evidence in the light most favorable to the prosecution, any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.@  Jackson
v. Virginia, 443 U.S. 307, 319 (1979). 
The standard is applicable to both direct and circumstantial evidence
cases.  See Geesa v. State, 820
S.W.2d 154, 158 (Tex. Crim. App. 1991), overruled in part on other grounds,
Paulson v. State, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000).








In
possession of controlled substance cases, two evidentiary requirements must be
met:  first, the State must prove that
appellant exercised actual care, control and management over the contraband;
and second, that he had knowledge that the substance in his possession was
contraband.  See King v. State,
895 S.W.2d 701, 703 (Tex. Crim. App.1995)(citing Martin v. State, 753
S.W.2d 384, 387 (Tex. Crim. App.1988)). 
To establish criminal liability as a party, the State must prove that
the defendant acted with the intent to promote or assist the offense by
soliciting, encouraging, directing, aiding, or attempting to aid the other
person in the commission of the offense. 
Tex. Pen. Code Ann. '
7.02(a)(2) (Vernon 1994).  The mere
presence of the accused at a place where contraband is located does not make
him a party to joint possession, even if he knows of the contraband's
existence.  Oaks v. State, 642 S.W.2d
174, 177 (Tex. Crim. App. 1982).

Whether
the theory of prosecution is sole or joint possession, the evidence must
affirmatively link the accused to the contraband in such a manner and to such
an extent that a reasonable inference may arise that the accused knew of the
contraband's existence and that he exercised control over it.  Travis v. State, 638 S.W.2d 502, 503
(Tex. Crim. App. 1982).  When an accused
is not in exclusive possession and control of the place where contraband is
found, it cannot be concluded he had knowledge or control over the contraband
unless there are additional independent facts and circumstances that
affirmatively link him to the contraband. 
Brown v. State, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995); Cude
v. State, 716 S.W.2d 46, 47 (Tex. Crim. App. 1986); Sandoval v. State,
946 S.W.2d 472, 476 (Tex. App.BCorpus Christi 1997, no pet.).  Similarly, when the contraband is not found
on the accused's person or it is not in the exclusive possession of the
accused, additional facts and circumstances must link the accused to the
contraband.  Menchaca v. State,
901 S.W.2d 640, 651 (Tex. App.BEl Paso 1995, pet. ref'd); Musick v.
State, 862 S.W.2d 794, 804 (Tex. App.BEl Paso 1993, pet. ref'd).








The
affirmative links doctrine is the appropriate means of applying the Jackson
rationality standard of review.  Martinets
v. State, 884 S.W.2d 185, 188 (Tex. App.BAustin
1994, no pet.).  The Court of Criminal
Appeals explained this doctrine in Brown v. State, 911 S.W.2d 744, 747
(Tex. Crim. App. 1995):

[U]nder
our law, an accused must not only have exercised actual care, control, or
custody of the substance, but must also have been conscious of his connection
with it and have known what it was, evidence which affirmatively links him to
it suffices for proof that he possessed it knowingly.  Under our precedents, it does not really
matter whether this evidence is direct or circumstantial.  In either case it must establish, to the
requisite level of confidence, that the accused's connection with the drug was
more than just fortuitous.  This is the
whole of the so-called Aaffirmative links@ rule.

 

Id. at 747.

Certain
nonexclusive factors may be considered when determining whether the evidence is
sufficient to affirmatively link the accused with the controlled substance:

1.
Whether the contraband was in plain view or recovered from an enclosed place;[2]

 

2. The
accused was the owner of the premises or had the right to possess the place
where the contraband was found, or the owner or driver of the automobile in
which the contraband was found;

 

3. The
accused was found with a large amount of cash;

 

4. The
contraband was conveniently accessible to the accused, or found on the same
side of the vehicle as the accused was sitting;

 

5. The
contraband was found in close proximity to the accused;

 

6. A
strong residual odor of the contraband was present;

 

7. The
accused possessed other contraband when arrested; 

 








8.
Paraphernalia to use the contraband was in view, or found on the accused;

 

9. The
physical condition of the accused indicated recent consumption of the
contraband in question;

 

10.
Conduct by the accused indicated a consciousness of guilt;[3]

 

11. The
accused attempted to flee;

 

12. The
defendant made furtive gestures;

 

13. The
accused had a special connection to the contraband;

 

14. The
occupants of the premises gave conflicting statements about relevant matters; 

 

15. The
accused made incriminating statements connecting himself  to the contraband;

 

16. The
quantity of the contraband; and,

 

17. The
accused was observed in a suspicious area under suspicious circumstances. 

 








Carvajal
v. State, 529 S.W.2d 517, 520 (Tex. Crim. App. 1975); State v.
Derrow, 981 S.W.2d 776, 779 (Tex. App.BHouston [1st Dist.] 1998, pet. ref'd);
Mohmed v. State, 977 S.W.2d 624, 627 (Tex. App.BFort
Worth 1998, pet. ref'd); Cantu v. State, 944 S.W.2d 669, 670 (Tex. App.BCorpus
Christi 1997, pet. ref'd); Ortiz v. State, 930 S.W.2d 849, 853 (Tex.
App.BTyler
1996, no pet.); Dixon v. State, 918 S.W.2d 678, 681 (Tex. App.BBeaumont
1996, no pet.); Washington v. State, 902 S.W.2d 649, 652 (Tex. App.BHouston
[14th Dist] 1995, pet. ref=d); Watson v. State, 861 S.W.2d
410, 414‑15 (Tex. App.BBeaumont 1993, pet. ref'd).

The
number of the factors is not as important as the logical force the factors have
in establishing the elements of the offense. 
Jones v. State, 963 S.W.2d 826, 830 (Tex. App.BTexarkana
1998, pet. ref'd); Hurtado v. State, 881 S.W.2d 738, 743 (Tex. App.BHouston
[1st Dist.] 1994, pet. ref'd); Gilbert v. State, 874 S.W.2d 290, 298
(Tex. App.BHouston
[1st Dist.] 1994, pet. ref'd).  While
affirmative links may be proved by circumstantial evidence, proof amounting to
a strong suspicion or even a probability will not suffice.  Grant v. State, 989 S.W.2d 428, 433
(Tex. App.BHouston
[14th Dist.] 1999, no pet.) (citing Dubry v. State, 582 S.W.2d 841, 844
(Tex. Crim. App. [Panel Op.] 1979)). 
Ultimately, the question of whether the evidence is sufficient to
affirmatively link the accused to the contraband must be answered on a case by
case basis.  Whitworth v. State,
808 S.W.2d 566, 569 (Tex. App.BAustin 1991, pet. ref'd).

II.  Factual Summary.








On June
8, 1999, at approximately 8:30 p.m., Texas Department of Public Safety (DPS)
Trooper, Derek Prestridge, was patrolling Interstate 10 eastbound in Chambers
County with Trooper Cody Muse.[4]  This particular stretch of the interstate
consisted of multiple lanes of traffic separated by a cement wall from the
multiple lanes of traffic traveling west. 
Prestridge observed a 1990 Chevrolet Lumina four door automobile in the
center lane cross over the left lane marker. 
Prestridge activated his emergency lights to stop the vehicle.  At that time, Prestridge could see two
individuals in the vehicle.  As the
vehicle pulled over, Prestridge saw the front seat passenger, appellant,
apparently Amoving
around, shuffling inside the car,@ and a third individual, Jerome Degree,
who had been laying in the back seat Apopped up.@  Prestridge testified appellant=s
movement created the Apossibility of weapons in the vehicle and
either attempting to hide a weapon or maybe making access to a weapon for their
B
themselves during the contact.@ 








The driver,
Earl Bellard, immediately exited the vehicle, which Prestridge found uncommon.[5]  Prestridge performed the horizontal gaze
nystagmus test on Bellard to determine if he was intoxicated.  While Prestridge performed the test, Muse
checked on the passengers.  Prestridge
asked Bellard if he had a criminal record; the information Bellard provided
conflicted with the information Prestridge received from the dispatcher.[6]  Appellant provided information of his
criminal record that also conflicted with Prestridge=s
information.[7]  Prestridge testified that appellant appeared
nervous, and while nervousness was normal when being stopped for a traffic
violation, appellant appeared more nervous than normal.  Appellant was asked to exit the vehicle and
when he complied, he backed toward Prestridge as if to be handcuffed.  Prestridge found this unusual.  Prestridge=s
pat-down search of appellant revealed no contraband, paraphernalia or weapons.

Prestridge
questioned the three occupants of the vehicle separately about their
travels.  Prestridge testified appellant
was unsure and evasive.  On the video,
Prestridge asked Bellard for permission to search the vehicle.  Bellard stated he was not the owner.  Prestridge then asked Degree, who was the
owner, for permission.  Degree consented
to the search.  Prestridge did not seek
appellant=s
permission to search the vehicle.  Upon
searching the area underneath the front passenger seat, Prestridge recovered a
.357 Smith & Wesson firearm.  The
weapon was loaded and positioned with the grip toward the front of the
vehicle.  This discovery caused
Prestridge to order the occupants of the vehicle to remove their shoes, which
reduced the chance of their flight or resisting arrest.[8]  A second gun was subsequently found in the
vehicle.[9]  Neither weapon was examined for
fingerprints.  








Prestridge
opened the trunk and recognized the odor of marihuana.  Prestridge testified the odor was not apparent
before the trunk was opened.  He
discovered seven bundles of marihuana. 
The vehicle was transported to the highway patrol office where the back
seat was removed and Prestridge discovered an envelope, a box of sandwich
baggies, rubber gloves, $1,978 in cash, and a Ritz cracker box which contained
the alleged cocaine.  

Luggage
was found in the back seat and in the trunk. 
A black duffle bag, identified as belonging to Bellard, was found in the
back passenger seat.  That bag contained
drug paraphernalia in the form of baggies used for weighing drugs.  A blue bag identified as belonging to
appellant was also found in the backseat. 
That bag contained articles of clothing and no drug paraphernalia.  Prestridge stated that nothing in appellant=s
luggage linked him to the contraband. 
Prestridge thought it odd to carry luggage in the back seat.  In the trunk, Prestridge recovered a neck and
back brace; Degree is seen wearing a neck brace on the video, and heard
complaining of a back injury.  Articles
of Big & Tall clothing were also found in the trunk and Prestridge
testified Degree was larger than appellant. 
Three pair of tennis shoes were found in the trunk: two pair were size
14 and the third pair was size 15. 
Prestridge testified Degree wore size 14.  A pair of size 11 shoes were found in Bellard=s
bag.  Degree was searched and $400 was
recovered from his person.  Appellant was
also searched but no money was found on his person.  








A DPS
chemist testified the marihuana weighed 103.65 pounds.  The cocaine weighed 1,220 grams, and was 36%
pure.  Baytown Police Officer Charles
Widner testified the Houston area was considered a hub for drug smuggling and
the transportation of drugs in the United States and the North American
continent.  Widner estimated the
marihuana to have a wholesale value of $43,435 and a street value of
$150,000.  He stated the cocaine had a
street value of $300,000.  Widner stated
it was uncommon for a single person to transport this amount of contraband. 

III.  Analysis

We will
begin our analysis by considering two cases from our sister courts which
addressed a similar factual scenario.  In
Dixon v. State, 918 S.W.2d 678, 679 (Tex. App.BBeaumont
1996, no pet.), two peace officers stopped a car for speeding; Dixon was a
passenger.  The driver told the officers
that he and Dixon were going to Louisiana to visit his sick mother.  Id. at 680.  Dixon was extremely nervous, his breathing
was rapid, his hands were shaking and he would not make eye contact.  Id. 
Dixon claimed he and the driver, his cousin, were from Houston and
enroute to Baton Rouge, Louisiana to visit the driver's sick sister.  Id. 
Dixon indicated they were going to be there for three days.  Id. 
When the second officer questioned Dixon, he would not look at him,
could not keep still, and said they were going to visit his sick sister.  Id. 
Dixon stated he knew the driver's mother and she was doing fine.  Id. 
The driver gave consent to the search. 
Dixon, 918 S.W.2d at 680. 
One officer opened the trunk and found two guitars and a speaker.  Id. 
He asked what the speaker and guitars were for and was told by one of
them that they intended to play music with them in Louisiana.  Id. 
There was no luggage or clothes in the car.  Id. 
An officer pried open the speaker and found a plastic garbage bag
containing fifteen pounds of marijuana.  Id.  Neither Dixon nor the driver admitted to
ownership of the marijuana.  Id.








After
listing many of the factors that may be employed to affirmatively  link Dixon to the contraband, the court found
Dixon=s
extreme nervousness, the conflicting statements as to who they were going to
visit, the absence of luggage for a three‑day trip, and the fact that the
car was borrowed were links indicating guilt. 
Dixon, 918 S.W.2d at 681-82. 
However, the factors indicating Dixon did not have control of the
contraband were not only more numerous but more convincing: (1) Dixon did not
own the car, nor was he driving it; (2) the officers did not even ask Dixon=s
permission to search the car because he was not in control of it; (3) there was
no evidence any of the trunk's contents belonged to Dixon and no evidence Dixon
had access to the trunk; (4) there was no evidence Dixon=s
fingerprints were on the speaker containing the contraband or on anything in
the trunk; (5) there was no attempt by Dixon to flee the scene, no
incriminating statements, and no furtive gestures; (6) there is no evidence
Dixon was under the influence of marijuana when stopped, no odor of marijuana,
no drugs in the car, and no paraphernalia for using the contraband.  Id. 
Because there was no evidence Dixon had actual care, custody, control or
management over the contraband, the court found the evidence insufficient to
sustain the conviction.  Id. at
682.








In Moreno
v. State, 821 S.W.2d 344, 352 (Tex. App.BWaco
1991, pet. ref=d), the defendant argued the evidence was
insufficient to affirmatively link him to the 745 grams of cocaine found under
the hood of the vehicle.  The defendant
was a passenger in the vehicle, and upon his arrest and booking, peace officers
recovered eleven grams of cocaine in the defendant=s
wallet.  Id.  Nevertheless, the court found the evidence
insufficient to affirmatively link the defendant to the cocaine found under the
vehicle=s hood
because the defendant: (1) was not connected with the ownership or control of
the car; (2) made no furtive gestures; (3) did not attempt to escape; (4) he
made no incriminating statements; (5) was not under the influence of an illegal
drug; and, (6) the odor of an illegal drug was not present in or around the vehicle.  Id.

We will
consider the affirmative link factors enumerated above in light of this
precedent to determine whether the evidence is sufficient to establish
appellant=s
possession of the marihuana or the cocaine, either as a principal or a party to
the charged offenses.[10]  Neither the marihuana nor the cocaine was
found in plain view.  Instead, both were
secreted; the marihuana was in the trunk, and the cocaine underneath the back
seat of the vehicle.  Appellant was a
passenger in the vehicle and there is no evidence that he exercised any
ownership or control over the vehicle. 
In fact, the evidence is to the contrary, Bellard was the driver and
Degree was the owner of the vehicle who permitted Prestridge to conduct the
search.  Accordingly, Prestridge did not
ask appellant to consent to the search.








The
contraband was neither in close proximity to appellant, nor conveniently
accessible to him.  Instead, the
marihuana was in the locked trunk of a vehicle which was neither owned nor
driven by appellant, and the cocaine was hidden underneath a seat occupied by
Degree.  Prestridge testified the odor of
the marihuana was not detected until he opened the trunk.  There is no evidence of appellant being
present when the trunk was opened prior to Prestridge=s
search.  Additionally, the cocaine did
not exude an odor.  Paraphernalia was
discovered in Bellard=s luggage and underneath the back
seat.  No contraband or paraphernalia was
found on appellant or in his luggage.  In
fact, Prestridge admitted that nothing about appellant=s
luggage linked him to the contraband.  

Appellant
was not intoxicated and his physical condition did not indicate recent
consumption of either marihuana or cocaine. 
While Prestridge testified appellant appeared more nervous than normal,
his nervousness was certainly much less than that exhibited in either Dixon or
Leyva.  Dixon, 918 S.W.2d
at 680; Leyva, 840 S.W.2d at 760. Therefore, we do not find that
appellant=s
conduct indicates a consciousness of guilt. 
Appellant did not attempt to flee. 
The occupants of the vehicle gave conflicting statements as to the
length of their trip, but that information was not relevant; all of them
admitted they were returning from Houston. 
Any inconsistences are clearly less than those in Dixon, 918
S.W.2d at 680.  Appellant did not make
any affirmative statements connecting himself to the contraband.  The vehicle was traveling on an interstate
highway at approximately 8:30 p.m.  This
is neither a suspicious location nor can appellant=s
presence in a vehicle on a public thoroughfare be considered a suspicious
circumstance.








Admittedly,
the quantity of both the marihuana and cocaine was large.  Degree, the owner of the vehicle, occupied
the seat which concealed the cocaine and almost $2,000 in cash, and had $400 on
his person.  However, appellant had no
money on his person.  Prestridge
testified the amount of contraband was normally transported by more than one
individual.  This testimony would tend to
link appellant with the contraband if there were only two occupants of the
vehicle.  However, the presence of
Bellard and Degree, one being the driver and the other being the owner of the
vehicle, both of whom had personal property connected either with drug
paraphernalia or the marihuana, decrease the probative force of this as an
affirmative link for appellant.  Also
Prestridge=s
testimony that those who transported large amounts of drugs tended to travel
with weapons does not link appellant to the contraband because Prestridge
conceded that it was possible for a person sitting in the front passenger seat
to not know a firearm was underneath, and there were no fingerprints linking
appellant to the firearm.  








Additionally,
we do not find appellant made a furtive gesture toward the weapon.  The whole of Prestridge=s
testimony on this is as follows: 
Appellant Aappeared to be moving around, shuffling
inside the car,@ which created the Apossibility
of weapons in the vehicle and either attempting to hide a weapon or maybe
making access to a weapon for their B themselves during the contact.@  Mere movement by an occupant in a vehicle
being stopped by a law enforcement officer, not coupled with reliable
information nor suspicious circumstances, does not give rise to probable
cause to search of the vehicle.  Wilson
v. State, 511 S.W.2d 531, 535 (Tex. Crim. App. 1974).  As noted above, there was nothing suspicious
about these circumstances; Prestridge did not possess reliable information
related to either the contraband or the weapon, and there is no showing
appellant knew the weapon was present. 
In support of its furtive gesture argument, the State cites DeLaGarza
v. State, 898 S.W.2d 376 (Tex. App.BSan Antonio 1995, no pet.), and Hernandez
v. State, 867 S.W.2d 900 (Tex. App.BTexarkana 1993, no pet.).  However, those cases are not persuasive; DeLaGarza
does not involve a vehicular stop, and in Hernandez the defendant had
been in sole possession of the vehicle for at least twenty-four days.  DeLaGarza, 898 S.W.2d at 379; Hernandez,
867 S.W.2d at 904.

Finally,
we come to the three pair of tennis shoes in the trunk.  While there was evidence that two pair of
shoes were size 14, which was the size of shoe worn by Degree, there is no
proof of appellant=s shoe size.  Without such proof, we will not assume the
third pair of shoes belonged to appellant, or much less that appellant placed
them there at a time when the marihuana was present.  Therefore, there is nothing to show appellant
had a special connection to the contraband.

When
these factors are viewed in the light most favorable to the prosecution, we
hold the evidence is insufficient to establish appellant possessed the
contraband alone.  Moreover, when the
evidence is viewed in that same light, we hold the evidence is insufficient to
prove appellant had the intent to promote or assist the offense by soliciting,
encouraging, directing, aiding, or attempting to aid the other person in the
commission of the offense.  The evidence
does not link appellant to the contraband in such a manner and to such an
extent that a reasonable inference may arise that the accused knew of the
contraband's existence and that he exercised control over it.  Accordingly, we sustain the first and third
points of error.[11]








The
judgments of the trial court in cause numbers 10,887 and 10,888 are reversed
and a judgment of acquittal entered in each cause.  Tex.
R. App. P. 43.2(c); Burks v. United States, 437 U.S. 1, 18
(1978); Greene v. Massey, 437 U.S. 19, 24 (1978).

 

                                                   


CHARLES
F. BAIRD

Justice

 

 

Publish.  

Tex. R. App. P. 47.3.

 

Opinion
delivered and filed this the

28th day
of February, 2002.

 











[1]
Former Court of Criminal Appeals Judge Charles F. Baird assigned to this Court
by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov=t Code Ann. '
74.003 (Vernon 1998).





[2] When
the narcotics are secreted, the State must address whether the defendant knew
of the existence of the secret place and its contents. Vargas v. State,
883 S.W.2d 256, 263 (Tex. App.BCorpus Christi 1994, pet.
ref'd).





[3]
Excessive nervous behavior and unsettled demeanor may be examples of
consciousness of guilt.  Leyva v.
State, 840 S.W.2d 757, 760 (Tex. App.B‑El
Paso 1992, pet. ref'd) (after vehicle stopped defendant became Aincreasingly
nervous.@).  The courts have recognized, however, that
nervousness is a tenuous link to the contraband because most people are
somewhat nervous when confronted by a police officer.  Hernandez v. State, 867 S.W.2d 900,
905 (Tex. App.BTexarkana 1993,
no pet.) (citing Glass v. State, 681 S.W.2d 599, 602 (Tex. Crim. App.
1984) (AWe believe that
in this day and time that when a citizen is suddenly facing an imminent
confrontation with police officers for unknown reasons, most citizens with
nothing to hide will nevertheless manifest an understandable nervousness in the
presence of the officer.@).





[4]
Officer Muse did not testify at appellant=s
trial.





[5]
Prestridge video taped the stop of the vehicle and his subsequent interrogation
of the driver and passengers.  A redacted
version of the video was admitted into evidence without objection.  The video tape was not transcribed because
the trial judge found the words spoken on the video were not capable of
transcription and stated Alet the video
speak for itself.@  The tape was made a part if the appellate
record and has been reviewed by the court.





[6]
Prestridge did not elaborate on the extent or degree of the conflict with the
information received from Bellard.





[7]
Again, Prestridge did not elaborate on the extent or degree of the conflict
with the information received from appellant.





[8]
On the video, Prestridge announces that each occupant is under arrest for
unlawfully carrying a weapon.





[9]
This weapon was discovered by Robert Hancock, the wrecker driver who towed the
vehicle from the highway patrol station to his wrecking yard for storage.  The trooper who recovered this weapon stated
it was found between the driver=s
side seat and the center console.  





[10] The
trial court=s
charge to the jury authorized conviction under either theory, and the jury
returned a general verdict.  Therefore,
we must determine if the evidence is sufficient to support a finding of guilt
under any of the allegations submitted. 
If so, the verdict will be upheld. 
Rabbani v. State, 847 S.W.2d 555, 558 (Tex. Crim. App. 1992); Fuller
v. State, 827 S.W.2d 919, 931 (Tex. Crim. App. 1992).





[11] We
need not address the remaining three points of error.
See Tex. R. App. P. 47.1.