**Alexander Nathaniel BRENES,
Appellant**

v.

**The STATE of Texas, Appellee**

**No. 06–15–00108–CR**

Court of Appeals of Texas,
Texarkana,

Submitted: January 13, 2016
Decided: March 23, 2016

Michael Mowla, Michael Mowla, PLLC, Cedar Hill, TX, for appellant.

Gary D. Young, Lamar County & District Attorney, Paris, TX, for appellee.

Before Morriss, C.J., Moseley and Burgess, JJ.

## OPINION

Opinion by Justice Moseley

Although Alexander Nathaniel Brenes entered into a plea agreement under which he pled guilty to possession of between five pounds and fifty pounds of marihuana[1] (with the range of punishment enhanced to a second degree felony due to a previous conviction) for which he was sentenced to twenty years' imprisonment and pled guilty to possession of, with the intent to deliver, between four grams and 400 grams of 3,4–methylenedioxy methamphetamine[2] (commonly called ecstasy[3] or Molly),[4] for which he was assessed a sentence of twenty-five years' imprisonment, Brenes retained his right to appeal. Brenes' appellate issues center upon the trial court's denial of Brenes' motion to suppress evidence, his claim that the trial court had no jurisdiction over the case, his challenge to the legality of one of his sentences, and the trial court's failure to rule on the admissibility of Brenes' statement to police. After reviewing the record and applicable law, we will affirm the trial court's judgment and sentences.

We examine Brenes' points of error out of the order in which he presents them.

As part of the plea agreement, the State abandoned allegations that each of the drug possession crimes to which he entered a plea of guilty occurred within a drug-free zone, but did allege and prove the existence of one prior conviction for the purpose of enhancing the sentences.

The investigation of Brenes' drug activities had its origin when a deputy with the Lamar County Sheriff's Office related to Paris Police Department Detective Leigh Foreman that the deputy had been told by an informant that Brenes (whom Foreman knew to have been a previously-convicted narcotics dealer) was in possession of marihuana and ecstacy[5] and was "frequenting a house located in the 2300 block of Maple."

Foreman's investigation centered on a house at 2331 Maple, and Foreman, accompanied by two other policemen, went to that house. Foreman and the others encountered three women at that address, those being Angela Langston (whom Fore-

---

1. *See* Tex. Health & Safety Code Ann. § 481.121(b)(4) (West 2010).

2. *See* Tex. Health & Safety Code Ann. § 481.113(d) (West Supp.2015).

3. National Institute on Drug Abuse, The Science of Drug Abuse and Addiction, http://www.drugabuse.gov/publications/drugfacts/mdma-ecstasy-or-molly (last visited Mar. 7, 2016).

4. It must be noted the indictment alleged possession with intent to deliver methylenedioxy methamphetamine. The absence of "3,4–" is the basis of two of Brenes' points of error.

5. This is a common or "street" term describing 3,4–methylenedioxy methamphetamine. G. Gerra et al., Abstract of *Serotonergic Function After. (+/−) 3,4–methylene–dioxymethamphetamine ("Ecstasy") in Humans,* National Center for Biotechnology Information, http://www.ncbi.nlm.nih.gov/pubmed/9988361 (last visited Mar. 22, 2016).

man determined was the resident of the house and who controlled it), April Bankston (the sister of Langston), and Tiffany Deaton (something of a live-in babysitter). Langston consented to a search of the house, and that search resulted in the discovery of a small plastic baggy of marihuana in Langston's room. Foreman detected the odor of marihuana and a piece of packing tape in Deaton's room. Deaton informed Foreman that the packing tape had been used the previous day when she assisted Brenes in repackaging a large bundle of marihuana into smaller parcels. Deaton also informed Foreman that Brenes supplied her with marihuana and that she "conduct[ed] business" with him. She also informed Foreman that Brenes had been driving a green Toyota automobile and was keeping his drugs in a backpack.

At Foreman's request,[6] Deaton sent Brenes a text message asking if he had more "green" (a term she applied to marihuana). Deaton and Brenes exchanged several texts and a telephone call. Brenes agreed to return to Langston's home. Foreman and another officer (Sergeant Jeff Springer) hid inside the house, and a third policeman (Detective Shane Stone) waited in a car down the street. Brenes soon arrived, driving the Toyota which Deaton had described, and entered the Lankston house, being immediately detained by the officers. The policemen asked for Brenes' permission to search the Toyota, but Brenes refused that permission. Despite that refusal, Foreman told Brenes he was going to search the automobile anyway and approached it. Foreman

testified that when he approached Brenes' car, he could smell the odor of marihuana, the smell of which was apparent through the car's open windows. Based upon detection of that odor, Foreman searched the car. During that search, Foreman located the contraband leading to Brenes' arrest and convictions.

## I.  Suppression Properly Denied

Brenes' third point of error complains that the trial court erred in denying Brenes' motion to suppress evidence seized after Foreman searched Brenes' automobile and statements made by Brenes to law enforcement officers.[7] At the hearing on Brenes' motion to suppress, Foreman testified that he went outside to Brenes' car, that the windows were rolled down, and that he immediately detected the strong odor of marihuana emanating from the car. A search of the car yielded about twelve pounds of marihuana and ninety-nine tablets, as well as digital scales, baggies, and the backpack (holding nine bundles of marihuana, scales, and baggies) were located in the Toyota's trunk. Foreman also indicated that the tape on the marihuana bundles resembled the packing tape he had previously found in Deaton's room. The tablets proved to be 3,4-methylenedioxy methamphetamine, or "ecstasy."

At the suppression hearing, Brenes elicited testimony from Deaton that Foreman threatened to involve the CPS,[8] telling Deaton that if the CPS workers were informed that marihuana had been found in the home, Deaton's children would be removed from the home.[9]

---

6.  Foreman testified that he observed the text conversation between Brenes and Deaton.

7.  This evidence was the large amount of marihuana and ecstasy tablets.

8.  The Child Protective Services Division of the Texas Department of Family and Protective Services.

9.  When the trial court limited his cross-examination of Foreman on this topic, Brenes made an offer of proof claiming that were he

██ "In a hearing on a motion to suppress evidence, a defendant bears the initial burden of proof to demonstrate that the search and seizure occurred without a warrant." *Hitchcock v. State*, 118 S.W.3d 844, 848 (Tex.App.—Texarkana 2003, pet. ref'd) (citing *Bishop v. State*, 85 S.W.3d 819, 821 (Tex.Crim.App.2002)). "Once the defendant demonstrates that a warrantless search occurred, the burden shifts to the State to prove that a warrant existed or that an exception, under either the Fourth Amendment to the United States Constitution or Article I, Section 9, of the Texas Constitution, justified the warrantless search given the totality of the circumstances." *Harris v. State*, 468 S.W.3d 248, 254 (Tex.App.—Texarkana 2015, no pet.) (citing *State v. Steelman*, 93 S.W.3d 102, 106 n. 5 (Tex.Crim.App.2002)). There is no question here that the search was conducted without a warrant.

██ A Texas statute incorporates the exclusionary rule regarding evidence which is not obtained in accord with the Constitutions and laws of both the United States and Texas. TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2005). "The standard of review for the trial court's ruling on a motion to suppress is abuse of discretion." *Harris*, 468 S.W.3d at 254 (citing *Oles v. State*, 993 S.W.2d 103, 106 (Tex.Crim.App.1999)). "In a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony." *State v. Ballard*, 987 S.W.2d 889, 891 (Tex.Crim.App.1999). Appellate courts "should afford almost total deference to a trial court's determination of the historical facts that the record supports[,] especially when the trial court's fact findings are based on an evaluation of credibility and demeanor." *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). "The appellate courts ... should afford the same amount of deference to trial courts' rulings on 'application of law to fact questions,' also known as 'mixed questions of law and fact,' if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. The appellate courts may review de novo 'mixed questions of law and fact' not falling within this category." *Id.* (citation omitted).

Brenes argues that the Paris police had neither the basis to seize him at Langston's home nor the authority to conduct a warrantless search of his car without his consent. However, the police were lawfully at Langston's home and searched that residence with Langston's consent. They found evidence of marihuana use and marihuana sales. Deaton told them she purchased or received marihuana from Brenes the day before, that she helped him repackage the drugs into smaller parcels, and that she contacted Brenes and arranged for him to return to the house with more marihuana. After Foreman overheard Deaton make the request that Brenes come to the house to deliver illicit drugs, Brenes arrived at the house, driving the car that Deaton had described him using the day before. Based on these circumstances, officers had a reasonable suspicion that Brenes might be engaged in the sale of illegal drugs. Therefore, Foreman had a basis to detain him briefly for investigative purposes.[10] Although Brenes

allowed to question the detective, Foreman would have admitted to having threatened Deaton with CPS's removal of her children and "[p]lac[ing] [the three women] under the duress of having children taken away if they did not tell him information about Alex

Brenes." Brenes continued, "[Foreman] will also testify either truthfully or deny that he told them all that he was looking for ... Alex Brenes."

10. *See Morris v. State*, 195 S.W.3d 740, 745 (Tex.App.—Amarillo 2006, pet. ref'd) (officers

denied permission for Foreman to search his car, when Foreman approached the automobile and detected the odor of marihuana emanating from it, Foreman then possessed probable cause to search it.[11]

The trial court was within its discretion to deny Brenes' motion to suppress. We overrule the third point of error.

## II. Because the Indictment Alleges an Offense, the Trial Court's Judgment is Not Void

Brenes' first point of error argues that the trial court's judgment on the second count is void because although the indictment alleged that the illicit drug that Brenes possessed with intent to sell was "Ecstasy or Methylendioxy methamphetamine," the illicit controlled substance identified by statute is instead defined as "3,4-methylenedioxy methamphetamine." TEX. HEALTH & SAFETY CODE ANN. § 481.103(a)(1) (West Supp.2015). We find the indictment adequately alleged a criminal offense committed by Brenes, giving him sufficient notice to prepare a defense. The trial court thus was properly vested with jurisdiction, and the judgment in the second count was not void.

In order to be valid and to be in compliance with the Texas Constitution, indictments must "charge: (1) a person; (2) with the commission of an offense." *Cook v. State*, 902 S.W.2d 471, 477 (Tex. Crim.App.1995) (citing TEX. CONST. art. V, § 12(b)).

> The proper test to determine if a charging instrument alleges "an offense" is whether the allegations in it are clear enough that one can identify the offense alleged. If they are, then the indictment is sufficient to confer subject matter jurisdiction. Stated another way: Can the trial court (and appellate courts who give deference to the trial court's assessment) and the defendant identify what penal code provision is alleged and is that penal code provision one that vests jurisdiction in the trial court?

*Teal v. State*, 230 S.W.3d 172, 180 (Tex. Crim.App.2007) (citation omitted). Teal was indicted for the felony offense of hindering apprehension.[12] The Texas Court of Criminal Appeals rejected Teal's argument that the indictment's failure to allege that Teal possessed the knowledge that the man whose apprehension Teal was accused of hindering was a felon rendered the indictment fatally defective. While the indictment "certainly was . . . defective" in failing to include one of two elements

who received tip drugs were being sold at car wash and observed behavior consistent with drug sales had reasonable suspicion of criminal activity and could briefly detain those present); *Neese v. State*, 930 S.W.2d 792, 799 (Tex.App.—Beaumont 1996, pet. ref'd) (tip from informant of unknown quality followed by verification of some—but not all—information supplied justified investigative detention). Irrespective of whether Deaton had previously given reliable information to police, she was still at the scene, had already given her name, and was accountable to police had she provided false information.

11. Although Foreman did not specify if he smelled two types of marihuana (1) burnt (2) "raw" or "green," this omission is not fatal;

the smell of either supports probable cause to search for evidence of criminal activity. *See Moulden v. State*, 576 S.W.2d 817, 818 (Tex. Crim.App. [Panel Op.] 1978) (burnt marihuana odor); *Dickey v. State*, 96 S.W.3d 610, 613 (Tex.App.—Houston [1st Dist.] 2002, no pet.) (raw marihuana); *Hernandez v. State*, 867 S.W.2d 900 (Tex.App.—Texarkana 1993, no pet.) (green marihuana); *Saenz v. State*, 632 S.W.2d 793 (Tex.App.—Houston[14th Dist.] 1982, pet. ref'd) (raw marihuana).

12. *See* TEX. PENAL CODE. ANN. § 38.05(c), (d) (West 2011). The offense is a class A misdemeanor, unless the accused knew that the person harbored was either accused of or had been convicted of a felony.

which raised the offense from a misdemeanor to a felony, the indictment "was nonetheless sufficient to vest jurisdiction— it charged 'an offense' and one could fairly conclude from the face of the charging instrument that the State intended to charge a felony offense." *Id.* at 182.

The indictment at bar alleged that Brenes possessed with intent to deliver a controlled substance with the common vernacular name of ecstasy and the scientific name methylenedioxy methamphetamine. Although it is true the indictment apparently inadvertently omitted "3,4–" before the word "methylenedioxy," Brenes has not explained or established how this oversight amounted to a charging instrument which failed to allege an offense. Brenes and the trial court could each easily ascertain that Brenes was alleged to have violated a particular statute. In fact, the indictment had a cover page which (1) titled each of the two offenses alleged, (2) included the allegation that the crimes were enhanced because they had been committed in a drug-free zone, and contained the corresponding Penal Code and Health and Safety Code section numbers that applied to the offense. We observe that the name of the chemical substance "3,4–methylenedioxy methamphetamine" appears twice in the Texas statutes. It is listed in Section 481.102(a)(1) of the Health and Safety Code as "3,4–methylenedioxy methamphetamine" in Penalty Group 2 and in Section 481.032 of the Health and Safety Code identifying "3,4–methylenedioxy–methamphetamine" as a Schedule I hallucinogenic controlled substance.[13]

Brenes directs us to *Miles v. State*, 357 S.W.3d 629 (Tex.Crim.App.2011), as his support for the proposition that the absence of "3,4–" from the description of the illicit drug is fatal to the case against him. The *Miles* case involved an allegation that the defendant possessed 200 grams or more but less than 400 grams of codeine with the intent to deliver. Codeine can (under different circumstances) be classified under the Texas Health and Safety Code as a Penalty Group 1 drug, a Penalty Group 2 drug, or a Penalty Group 3 drug.[14] The heading on Miles' indictment had the notation "POSS INT DEL 200 G PG3/4 2nd," and Miles was convicted by a jury of an offense relating to a Penalty Group 1 drug, this having a different range of punishment than it would under drug offense falling in Penalty Group 3 or Penalty Group 4. At issue on appeal was whether Miles had been tried for possession of codeine with intent to deliver as classified as a Penalty Group 1, Penalty Group 3, or Penalty Group 4 controlled substance.[15] During voir dire, both Miles and the State referred to the penalty range of the offense for which Miles was being tried as that attributable to a Penalty Group 1 drug classification (an offense that had a penalty range of a minimum of ten years' imprisonment, but not more than ninety-nine years' or life imprisonment, plus a fine of not more than $100,000.00); however, the trial court mistakenly told the venire the maximum fine was $10,000.00, which would be applicable if the offense was possession with intent to deliver Penalty

13. It should be noted here that not even the same statute resolutely employs the same spelling each time the drug is mentioned. In the scheduling section, the drug "methylene-dioxy-methamphetamine" is hyphenated but there is no hyphen between the words in the section where the drug is assigned to a Penalty Group.

14. TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(A), 481.105(1), 481.112, 481.114 (West 2010), 481.104(a)(4) (West Supp.2015).

15. *Cf.* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(A), 481.104(a)(4), 481.105(1), 481.112, 481.114.

Group 4 codeine). But the heading on the indictment, with the notation "PG3/4 2nd," suggested that the charging instrument alleged a crime involving a controlled substance in either Penalty Group 3 or 4, which would carry a punishment range for a first degree felony (five to ninety-nine years or life in prison, and a fine not to exceed $10,000.00). Codeine possession is a Penalty Group 1 offense if the codeine is of a strain or concentration not listed in Penalty Groups 3 or 4:

> Penalty Group 4 codeine consists of codeine compositions with "not more than 200 milligrams of codeine per 100 milliliters or per 100 grams," along with "one or more nonnarcotic active medicinal ingredients in sufficient proportion to confer on the compound, mixture, or preparation valuable medicinal qualities other than those possessed by the narcotic drug alone."

*Id.* at 632 (quoting Tex. Health & Safety Code Ann. § 481.105(1)). "Penalty Group 3 codeine consists of codeine compositions with " 'not more than 1.8 grams of codeine ... per 100 milliliters ...', with one or more active nonnarcotic ingredients in recognized therapeutic amounts.' " *Id.* at 632 n. 8 (quoting Tex. Health & Safety Code Ann. § 481.104(a)(4)).

While Miles was indicted for possession of "codeine in the amount of 200 grams or more, including any adulterants or dilutants," with intent to deliver, the jury found him guilty only of the lesser offense of possession of said amount of codeine. *Id.* at 631. The Court of Criminal Appeals found that the indictment failed to allege a specific codeine offense. Accordingly, the particular offense had to be determined to measure the trial evidence by the "hypothetically correct jury charge"[16] test. As mentioned, the parties' argument during voir dire presented the case as involving

punishment for a Penalty Group 1 offense. During trial, the State presented expert testimony as to the weight and contents of the suspected codeine, that evidence showing that the codeine concoction possessed by Miles also contained an antihistamine called promethazine. However, there was no evidence or testimony "whether the promethazine ... was or was not 'in sufficient proportion to confer on the compound, mixture, or preparation valuable medicinal qualities other than those possessed by the narcotic drug alone.' " *Id.* at 635 (quoting Tex. Health & Safety Code Ann. § 481.105(1) (defining Penalty Group 4)). The punishment charge only provided a punishment range for possession of Penalty Group 1 codeine. Based on all the circumstances, the Court of Criminal Appeals concluded that Miles had been tried for possession of Penalty Group 1 codeine. However, one of the required elements for a Penalty Group 1 hypothetically correct jury charge is defining codeine as such a type "not listed in Penalty Group 3 or 4." Tex. Health & Safety Code Ann. § 481.102(3)(A).

> To prove this element, the State could show that (1) the concentration of the codeine was more than 1.8 grams of codeine per 100 milliliters, or (2) the codeine was not combined with active nonnarcotic ingredients in recognized therapeutic amounts or in sufficient proportion to confer on the compound valuable medicinal qualities other than those possessed by the codeine alone.

*Miles,* 357 S.W.3d at 637–38 (footnote omitted).

The State's expert testimony "about the identity, quantity, and concentration of substances" "failed to address the qualitative characteristics distinguishing Penalty Groups 1 and 4." *Id.* at 635. "The evi-

16. *See Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App.1997).

dence at trial showed only the mere presence of promethazine," an antihistamine often paired with codeine. *Id.* at 635, 638. The state of evidence could not have allowed "a rational juror [to] infer whether the promethazine was or was not in recognized therapeutic amounts or in sufficient proportion to confer on the compound valuable medicinal qualities other than those possessed by the codeine alone." *Id.* at 638. That is, a rational juror could not have determined whether the codeine and promethazine compound satisfied the requirements of Penalty Group 3 or 4. Penalty Group 1 codeine is "[c]odeine not listed in Penalty Group 3 or 4." TEX. HEALTH & SAFETY CODE ANN. § 481.102(3)(A) (West 2010). "[A]n essential element of the particular offense for which [Miles] was tried," i.e., possession of Penalty Group 1 codeine, had not been sufficiently proved; the Court of Criminal Appeals rendered an acquittal.

The indictment in Brenes' case (regarding count II) referred to only one possible crime, a crime involving only one possible controlled substance—3,4–methylenedioxy methamphetamine. Unlike *Miles,* where as many as three possible Penalty Groups could have applied to the evidence, 3,4–

methylenedioxy methamphetamine could have fallen into only one Penalty Group. Count II thus accused Brenes of a particular offense; while the first numerical characters, "3,4–" (which apparently refer to the chemical make-up of the controlled substance), were absent from the charging instrument, methylenedioxy methamphetamine could only refer to one controlled substance in one Penalty Group.[17] Here, because the indictment alleged possession of an amount firmly placing the alleged crime in a first degree felony punishment range, the indictment adequately vested the trial court with jurisdiction. *See Teal,* 230 S.W.3d at 180. Additionally, an indictment, not an information, was returned; this further puts a defendant on notice the State seeks conviction for a felony offense. *See Kirkpatrick v. State,* 279 S.W.3d 324, 329 (Tex.Crim.App.2009). Also, possession with intent to deliver 3,4–methylenedioxy methamphetamine is, at its lowest offense level, a state jail felony. There is no chance that Brenes could have believed himself to be charged with a misdemeanor; this further establishes that the parties were aware a felony was alleged, a felony giving the district court (not a court having misdemeanor jurisdiction) jurisdiction.[18]

17. In an unpublished opinion, this Court dealt with another mix-up involving the same controlled substance. In *Stevens v. State,* the indictment charged Stevens with delivery of 3,4–methyldioxymethamphetamine, as opposed to 3,4–methylenedioxy methamphetamine. *Stevens v. State,* No. 06–05–00235–CR, 2006 WL 1148102, at *2 (Tex.App.—Texarkana May 2, 2006, pet. ref'd) (mem. op., not designated for publication). Observing that, "[i]n general, the mere misspelling of a name does not prevent an indictment from alleging an offense, provided the indictment nevertheless provides the necessary notice of the statutory offense" and that "[t]he indictment, even with the misspelled word, accused Stevens of a crime with enough clarity and specificity to identify the penal statute under which the State intended to prosecute." *Id.* at *3. Our conclusion was "particularly true when one

considers that scientific names appear excessively complex to most laymen." *Id. Stevens* similarly rejected the appellant's argument that this misspelling amounted to an ineffective indictment and a void judgment.

18. Brenes also cites *Moore v. State,* 545 S.W.2d 140 (Tex.Crim.App.1976), as authority that "[i]n a drug case where the indictment does not allege an offense, the conviction based on the indictment is void." This is a correct recitation of *Moore*'s holding; but there, the Penal Code's attempt provision was found not to apply to a Controlled Substances Act offense. *Id.* at 142. This was the source of the Court of Criminal Appeals' conclusion the indictment failed to allege an offense, and thus the judgment was void. As discussed *supra,* Brenes' indictment adequately charged him with an offense and gave him sufficient

The court having properly obtained jurisdiction, its judgments were not void. We overrule Brenes' first point of error.

### III. Legality of Enhanced Sentence [19]

Brenes' second point of error argues that the plea agreement must be set aside because the trial court assessed illegal sentences for both counts. This argument is centered on the language of the enhancement paragraphs, which alleged the existence of a prior conviction involving "methylenedioxy." As he argued in his first point of error, Brenes again asserts there is no "offense known as 'possession of Methylenedioxy' defined by Texas law." Brenes' reasoning is that the prior conviction alleged by the State to enhance both counts' range of punishment failed to list an offense under the Texas Penal Code. In the main, Brenes says that the prior conviction could not have been used to enhance the range of punishment for either count.

Recapitulating, we note that Brenes was indicted for two offenses. Count one charged him with the possession of at least five pounds but not more than fifty pounds of marihuana, a third degree felony; count two alleged that he had possession of at least four grams but less than 400 grams of 3,4–methylenedioxy methamphetamine, with intent to deliver, a first degree felony. (As discussed above, the indictment failed to include the prefix "3,4–" on count II, but we have addressed that argument and determined this omission did not doom the trial court's jurisdiction). Both counts were alleged to have been committed in a drug-free zone. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.134 (West Supp.2015).

Both counts of the indictment alleged the existence of Brenes' prior conviction for possession of "the felony offense of Possession of Controlled Substance, namely: Methylenedioxy of four grams or more but less than 200 grams, in the 6th District Court of Lamar County, Texas, on March 3, 2006 in Cause Number 20928."

Whether this was a proper enhancement allegation is irrelevant as to count II, as we shall explain. Regarding count I, we find the allegation was sufficient to apprise Brenes of the State's intent to seek an enhanced punishment range and apprise him of the conviction to be so used.

### IV. Count II Sentence in Legal Range of Punishment

3,4–methylenedioxy methamphetamine is a Penalty Group 2 controlled substance. TEX. HEALTH & SAFETY CODE ANN. § 481.103(a)(1) (West Supp.2015). Possession of at least four grams or more but less than 400 grams of a Penalty Group 2 controlled substance constitutes a first degree felony. TEX. HEALTH & SAFETY CODE ANN. § 481.113(d). The twenty-five-year sentence to which Brenes agreed as part of his plea agreement was within the first degree felony range of punishment.[20]

Because under the plea agreement the State abandoned the allegation that the crime occurred within a drug-free zone, the presence of that allegation does not impact the sentence meted to Brenes.

### V. Enhancement of Punishment Range for Count I is Not Defective

Brenes also claims that his sentence for count I is illegal, thus requiring

---

information to determine the criminal statutory violation of which he was accused.

19. The State argues this complaint was not presented to the trial court and thus was waived, but "a party is not required to make a

contemporaneous objection to the imposition of an illegal sentence." *Mizell v. State,* 119 S.W.3d 804, 806 n. 6 (Tex.Crim.App.2003).

20. *See* TEX. PENAL CODE ANN. § 12.32 (West 2011).

us to set aside the plea agreement. Possession of at least five pounds but less than fifty pounds of marihuana is a third degree felony; if this conviction's punishment range were not enhanced, the trial court's sentence of twenty years' imprisonment would be outside the permissible range and illegal. But because the State adequately notified Brenes of its intent to seek an enhanced range of punishment, and because there is nothing on the face of the record calling into question the finality of the prior conviction, Brenes' range of punishment for a third degree felony was properly enhanced to that of a second degree felony. *See* TEX. PENAL CODE ANN. § 12.42 (West Supp.2015).

■ Where the State seeks to enhance an accused's punishment range, the defendant "must receive reasonable notice and an opportunity to be heard relative to the recidivist charge even if due process does not require that notice be given prior to the trial on the substantive offense." *Oyler v. Boles,* 368 U.S. 448, 452, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962). "The issue is whether appellant received sufficient notice of the enhancements so that he had an opportunity to prepare a defense to them." *Pelache v. State,* 324 S.W.3d 568, 577 (Tex. Crim.App.2010). To decide if sufficient notice was provided, a reviewing court "look[s] to the record to identify whether appellant's defense was impaired by the timing of the State's notice." *Id.* "[W]hen a defendant has no defense to the enhancement allegation and has not suggested the need for a continuance in order to prepare one, notice given at the beginning of the punishment phase satisfies the federal constitution." *Villescas v. State,* 189 S.W.3d 290, 294 (Tex.Crim.App.2006).

Brenes entered a plea of "true" to the enhancement allegation; he provided no defense to that allegation and neither expressed any surprise about the allegation nor requested a continuance when confronted with it. Brenes has not demonstrated any harm or indication that his defense was impaired by any insufficient notice by the State of the enhancement allegation. If he had any question about the prior conviction, he was provided the cause number, date, and court in which he was convicted (which was the same court in which the instant trial was pending) in order to confirm or challenge the alleged prior conviction.

■ Brenes also argues that because offenses under the Health and Safety Code are not offenses under the Penal Code, Health and Safety Code convictions are not subject to punishment enhancements under Section 12.42 of the Penal Code. As discussed *supra,* the conviction for first degree possession with intent to deliver 3,4–methylenedioxy methamphetamine could legally be punished by a sentence of twenty-five years' imprisonment. However, since Brenes makes this argument in regard to the count I possession of marihuana conviction, we must address it.[21]

Brenes says that Section 12.41 of the Penal Code applies:

> For purposes of this subchapter, any conviction not obtained from a prosecution under this code shall be classified as follows:
>
> (1) "felony of the third degree" if imprisonment in the Texas Depart-

**21.** While this is actually a multifarious point, in the interest of justice we will address it. A single point of error raising more than one legal theory renders the entire point of error multifarious. *See* TEX. R. APP. P. 38.1; *Davis v. State,* 329 S.W.3d 798, 803 (Tex.Crim.App. 2010). A party that poses a multifarious point of error risks having it rejected summarily.

ment of Criminal Justice or another penitentiary is affixed to the offense as a possible punishment;.

    (2) "Class B misdemeanor" if the offense is not a felony and, confinement in a jail is affixed to the offense as a possible punishment; .

    (3) "Class C misdemeanor" if the offense is punishable by fine only.

TEX. PENAL CODE ANN. § 12.41 (West 2011). Brenes argues that the Court of Criminal Appeals' *Childress v. State*, 784 S.W.2d 361 (Tex.Crim.App.1990), was wrongly decided. The section of *Childress* with which Brenes takes issue is that portion which held that an offense "classified in the Controlled Substances Act as a second degree felony, could be treated as such for purposes of enhancement." *Id.* at 365. Childress was accused and convicted of failure to stop and render aid, which at the time was not codified in the Penal Code. The prospective punishment was not more than five years in the penitentiary, not more than one year in jail, not more than a fine of $5,000.00, or both a fine and imprisonment. *Id.* at 362. Ultimately, the Court of Criminal Appeals found the offense of failure to render aid susceptible to the enhancing provisions of Section 12.42. In the process of reaching this conclusion, the court found that while it "disapproved [of] much of the analysis in *Gutierrez* [*v. State*, 628 S.W.2d 57 (Tex.Crim.App. [Panel Op.] 1980), *overruled on other grounds by Chambers v. State*, 711 S.W.2d 240 (Tex. Crim.App.1986) ]," a panel decision, the court "conclude[d] it was ultimately correct in holding the primary conviction for possession of heroin, then classified in the

Controlled Substances Act as a second degree felony, could be treated as such for purposes of enhancement." *Id.* at 365.[22]

If we correctly understand it, Brenes' argument is that an offense under the Health and Safety Code, because it is not an offense listed in the Penal Code, is not susceptible to enhancement under Section 12.42 of the Penal Code; we reject that interpretation. As in *Childress*, the appellant here was convicted of an offense not denominated within the Penal Code. The Health and Safety Code offense has particularly been ascribed a felony classification in conformity with the Penal Code. *Childress*, and one of the cases discussed therein, *Gutierrez*, both approved of applying Section 12.42's enhancing provisions to extra-Penal Code offenses. Such is the situation here, and we find enhancement proper.

## VI. No Error in Evidence Not Admitted

    ■ Finally, Brenes complains that the trial court erred in not issuing a ruling on the admissibility of a statement Brenes purportedly gave to law enforcement agents. Brenes argues the "trial court erred in accepting Appellant's guilty plea without first ruling that the recording of Appellant's statement at the Paris Police Department was inadmissible" because the statement did not comply with the requirements of the Texas Code of Criminal Procedure,[23] We find more than one problem with this argument.

    ■ First, we find nowhere in the record any statement made by Brenes to any

---

**22.** We are not certain whether we agree with Brenes' assertion that *Childress* was dictum where that opinion asserted " § 12.41(1) does not encompass a conviction for an offense obtained from a prosecution for an offense not defined or included in the penal code *so long as* 'punishment for the offense was clas-

sified in terms consonant with punishment provisions of the Penal Code.' " *See Childress*, 784 S.W.2d at 365.

**23.** *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (West Supp.2015).

peace officer, whether written or oral. It is the responsibility of the appellant to provide this Court with an adequate record supporting his appellate arguments. *See Rowell v. State,* 66 S.W.3d 279, 282 (Tex. Crim.App.2001); *see also* TEX. R. APP. P. 34.1, 34.6. Also, there is no indication at all that any statement by Brenes was admitted at trial. Brenes has not explained or provided authority showing how evidence not produced at trial could have harmed him.

Further, this assumes Brenes properly preserved this matter for appellate review. Brenes did argue for suppression of the drugs found in his car, and he also asked, at the end of the suppression hearing, that his statements to police be suppressed. These arguments, though, were made in the context of asserting that the officers' initial detention of Brenes and their search of his car were illegal (see discussion *supra*). As discussed above, the officers properly interviewed the women at the house on Maple and reasonably detained Brenes for investigative purposes. The search of his car was authorized when Foreman approached the vehicle and the smell of marihuana was emanating from it. While these are legal challenges to the evidence found in the car, which eventually led to statements made by Brenes, they are different from specific challenges to the admission of any statements under the requirements of recording of statements per Article 38.22. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22. At the suppression hearing, Brenes never argued any statements he made were not recorded or did not comply with Article 38.22, and so he did not preserve any argument on that issue. *See Resendez v. State,* 306 S.W.3d 308, 315 (Tex.Crim.App.2009) (appellant's

constitutional arguments and general citation to Article 38.22 at trial failed to preserve specific Article 38.22 appellate complaint).[24] Brenes' fourth point of error is overruled.

We affirm the trial court's judgments and sentences.

---

**24.** Stated another way, Brenes' appellate complaint does not comport with the objections or arguments he made at trial. *See*

*Wilson v. State,* 71 S.W.3d 346, 349 (Tex. Crim.App.2002).